# MURPHY *vs.* THE STATE.

[INDICTMENT FOR MURDER.]

1. *Challenge of jurors.*—In all trials for capital or penitentiary offenses, (Code, § 3585,) the State may, at its election, challenge for cause a juror who has a fixed opinion against capital or penitentiary punishments; yet the statute does not impose on the court the duty, *ex mero motu*, of setting aside a juror for this cause; nor can the prisoner complain if the State waives or forbears to exercise its right of challenge.
2. *General objection to evidence.*—A general objection to evidence, a part of which is legal, may be overruled entirely.
3. *Homicide; presumption of malice.*—The charge of the court to the jury in this case, as to the presumption of malice in cases of homicide, construed in connection with the fact, indisputably established, that the killing was perpetrated with a deadly weapon, held to contain no error prejudicial to the prisoner.

FROM the Circuit Court of Montgomery.
Tried before the Hon. JAMES B. MARTIN.

THE prisoner in this case, Patrick Murphy, was indicted for the murder of Hugh Keys, and pleaded not guilty to the indictment. "On the trial," as the bill of exceptions states, "the court asked a juror, regularly summoned, whether he had a fixed opinion against capital or penitentiary punishment. The attorney-general thereupon said, that he would waive the challenge for cause on behalf of the State. The prisoner insisted, by his counsel, that the juror was incompetent for cause, and that the State could not render him competent by waiving the objection. The court held otherwise, and put the juror upon the prisoner, who, to avoid his being placed on the jury, was compelled

to challenge him peremptorily, and thereby lessen, to that extent, his number of peremptory challenges ; to which ruling of the court the prisoner excepted."

"To prove the circumstances of the killing, the State introduced and examined as a witness one Mrs. Keys, the widow of the deceased. On cross-examination of said witness, the prisoner's counsel asked her, whether she did not swear, on the preliminary examination of the prisoner before Squire Nettles, on the 23d December, 1859, for the offense for which he was now being tried, that 'he (meaning the prisoner) always told Mr. Keys to come on ;' and read said expression to her from her sworn deposition, taken down in writing on said preliminary examination. The witness stated, that she had not so sworn on said preliminary examination. Thereupon the prisoner's counsel produced and proved the written deposition of said witness, as taken down on said preliminary examination, and read from it these words, 'He always told Mr. Keys to come on ;' and proved that said witness swore to said expression on said preliminary examination. The counsel for the State then offered to read the whole deposition of said witness, as written down on said preliminary examination ; not as original evidence in the cause, but to explain the testimony of said witness, and to show that there was no conflict between her testimony then and now. The prisoner objected to this evidence, as illegal, irrelevant, and calculated to mislead the jury ; but the court overruled his objections, and admitted the evidence for the purpose for which it was offered ; to which the prisoner excepted."

The court, *ex mero motu*, charged the jury as follows :

"Under this indictment, if the evidence, under the law as laid down by the court, warrant it, the prisoner may be convicted of murder in the first degree, murder in the second degree, or manslaughter in the first degree. Murder is the killing of a reasonable person, with malice aforethought, express or implied. Express malice is evidenced by threats, former grudges, lying in wait, &c. ; while malice may be implied from the preparation made, the

character of the weapon used, &c. Manslaughter is the
wrongful taking of the life of a reasonable being, without
malice; and it occurs when one takes the life of another,
in sudden heat of passion, without malice. No killing can
be murder, in the absence of malice; nor can a killing be
manslaughter, when done with malice. It devolves upon
the State, in every criminal case, to prove the facts consti-
tuting the defendant's guilt, and to satisfy the jury, be-
yond a reasonable doubt, of their truth. In this case, the
State must prove, that the defendant, prior to the finding
of the indictment, and in the county of Montgomery, killed
Hugh Keys with malice aforethought. So regardful is our
law of human life, that whenever it is proved that one per-
son has taken the life of another, the law presumes that it
was done with malice, and imposes upon the slayer the
*onus* of rebutting this presumption, unless the evidence
which proves the killing itself shows it to have been done
without malice. Murder, by our law, is divided into two
degrees—murder in the first, and murder in the second
degree. Every homicide, perpetrated by poison, lying in
wait, or any other kind of willful, deliberate, malicious and
premeditated killing, is murder in the first degree. Every
homicide, committed with malice aforethought, and which
is not embraced in the above definition, is murder in the
second degree. Manslaughter is the wrongful killing of a
reasonable creature in being, without malice; and if done
voluntarily, is manslaughter in the first degree.

"Examine this case, then, first in reference to murder
in the first degree. Has the State proved, that, prior to
the finding of this indictment, and in this county, the de-
fendant killed Hugh Keys with a bowie-knife; and further,
that he did so willfully, deliberately, maliciously, and with
premeditation? Does the whole evidence in the case sat-
isfy your minds, beyond a reasonable doubt, that these
things, and each of them, are true? If so, then the de-
fendant would be guilty of murder in the first degree. If,
on the contrary, the evidence fails thus to satisfy your
minds, either of the killing, or that it was done willfully,

deliberately, maliciously, and with premeditation, then the defendant would not be guilty of murder in the first degree, and you must proceed to inquire, whether the evidence shows him to be guilty of murder in the second degree. It is conceded, that the defendant took the life of Keys; and if it does not amount to murder in the first degree, then, whether it is murder in the second degree, depends upon the question, whether the killing was done with malice aforethought. As the court has already informed you, when a killing has been proved, the law presumes that it was done with malice, unless the same evidence which proves the killing, disproves or rebuts the presumption of malice. Does the evidence which proves the killing, itself disprove or rebut the presumption of malice? If, however, this evidence does not repel the presumption of malice, then look to all the other evidence in the case, —both that which tends to rebut the idea of malice, if there be such evidence, and all the evidence tending to show that the defendant was actuated by malice, if there be such evidence,—and if you find, from the entire evidence, that the killing was done by the defendant with malice aforethought, and that it does not amount to murder in the first degree, then the defendant would be guilty of murder in the second degree. But, if you find, upon a fair survey of the evidence, that the killing was done without malice, then the defendant would not be guilty of murder; and in that event, you must next inquire, whether the killing amounted to manslaughter. If the defendant, in this county, and before the finding of this indictment, wrongfully and voluntarily killed Hugh Keys with a bowie-knife, without malice, express or implied, then he would be guilty of manslaughter in the first degree.

"Homicide may be committed—human life may be taken—upon such provocation, and under such circumstances, as will acquit the slayer of all guilt; and such, the defendant says, is the homicide he has committed. He insists, that though he took the life of Keys, he did it in self-defense; that he did it to save his own life, or to save

10

his person from great bodily harm. The law on that sub-ject is this : Every man has the right to strike in self-defense—to repel force by force, when attacked, even to the death of the assailant ; provided, that the force which he uses is not disproportioned to the force which he is repelling. In this case, if you should believe, from the evidence, that it was necessary for the defendant to strike at the time he did strike, in order to save his own life, or to prevent the infliction of imminent and great bodily harm, and that he struck for this purpose, then the defend-ant would not be guilty. Or, if you should believe that, at the time the defendant struck, the circumstances which surrounded him were such as would have impressed the mind of a reasonable man with the honest belief, that it was necessary to strike, to save his own life, or to prevent great and impending bodily harm ; and that the defendant, actuated by these motives, struck,—then, though death was the consequence, he would be guiltless. The law ex-cuses the taking of human life, when the motive which prompts the act is one of self-defense and self-protection, and under circumstances inducing the reasonable belief that the act was necessary. You must determine what is the evidence on this subject. The State insists, that the defendant, entertaining the malicious intention to take the life of Keys, sought a quarrel with him, in order to find an opportunity to gratify his malice by taking his life. If, from a survey and impartial consideration of all the evi-dence, you believe that this is true—that the defendant sought the quarrel with the deceased, in order that he might take advantage of it to kill him, and, in obedience to this intention, did bring on the quarrel, and did take the life of the deceased—then, no provocation, no danger to himself, thus brought on, would excuse the killing. But what is the truth of this matter ? Does the evidence show that the position of the State, or that the position of the defendant, is true ? This you must determine, from the evidence."

To each part of this charge the prisoner excepted.

CHILTON & YANCEY, for the prisoner.
M. A. BALDWIN, Attorney-General, contra.

A. J. WALKER, C. J.—By section 3585 of the Code it is provided, that, in all trials for a capital or penitentiary offense, it is a good challenge for cause by the State, that the juror has a fixed opinion against capital or penitentiary punishments. The statute makes the specified cause a ground of challenge by the State, but it cannot, without the most glaring perversion of its meaning, be understood as making it a ground of challenge by the prisoner, or as imposing upon the court the duty, ex mero motu, of setting aside a juror for the cause mentioned. The State may, or may not, at its election, challenge a juror for the cause mentioned; and the prisoner has no right to complain that the State forbears to exercise the right of challenge.

[2.] It is possible that some portion of the evidence of Mrs. Keys, which the court admitted against the prisoner's objection, did not serve to explain either the expression as to which she was contradicted, or her motives; but it is certain that much of it was so connected with the particular expression, as to render the part so connected competent evidence. This being the case, the court, as we have often decided, committed no reversible error in overruling a general objection to the entire evidence. In placing our decision, however, upon this ground, we must not be understood as affirming that any portion of the evidence was illegal. Upon that subject we express no opinion.

[3.] The counsel for the prisoner, though confessedly able, have pointed out nothing objectionable in the charge of the court; and if there be any error in it, prejudicial to the prisoner, a careful examination has not enabled us to discover it. Construing the charge in reference to the fact, indisputably established, that the killing was perpetrated with a deadly weapon, we think there can be no doubt that the instruction as to the presumption of malice was correct.—York's case, 9 Metcalf, 93; 3 Green. Ev. § 14.

Judgment affirmed.