## THE STATE v. ETTA GORE, Appellant.

### Division Two, February 18, 1922.

1. **INFORMATION: Verification.** The information is not defective because the prosecuting attorney did not in the verification describe himself as prosecuting attorney.

2. **JURORS: Conscientious Scruples.** A. defendant charged with murder in the first degree is not prejudiced by the retention on the jury of persons who on their *voir dire* examination declare themselves possessed of conscientious scruples against inflicting the penalty at death, since it is to the interest of defendant that such persons be left on the panel. The provision of the statute (Sec. 4012, R. S. 1919) disqualifying from jury service "persons whose opinions are such as to preclude them from finding any defendant guilty of an offense punishable with death" is for the benefit of the State, and defendant cannot complain that the court overrules his challenges to such persons.

3. **DYING DECLARATION: Admissibility: Sense of Impending Death.** Where the attendant physician testified that he advised deceased that he could not recover, and that deceased said he "believed he was going to die," that deceased "thought he was going to die" and finally that deceased "said he was going to die," and in the written declaration deceased said that "realizing that I will die I do make this my dying statement," the declaration was admissible in evidence, although deceased lived à number of days after making it. [Following State v. Nocton, 121 Mo. l. c. 550, and State v. Lewis, 264 Mo. l. c. 427.]

4. ——: **Fragmentary.** Where the dying declaration is a terse, clear and fairly complete recital of the essential facts and circumstances attending the shooting of declarant, it is not inadmissible on the ground that it is fragmentary and does not detail all that was material to the issues stated therein.

5. **INSTRUCTION: Eliminating Self-Defense and Heat of Passion and Directing Verdict for Manslaughter.** An instruction telling the jury that "manslaughter is the killing of a human being not herein declared to be murder or excusable or justifiable homicide; and the court instructs the jury that if you find and believe from the evidence that the defendant killed the deceased while in the heat of passion, on a reasonable provocation, without malice and without premeditation, and under circumstances that is not justifiable or excusable homicide, but that defendant in a sudden passion, on a reasonable provocation, intentionally shot and killed the deceased, without malice or premeditation, and not in the necessary defense of her person, then the jury should find her guilty of manslaughter," simply followed the language of the statute defining manslaughter, did not infringe the defendant's right of self-defense, and did not in effect say that any killing not murder was manslaughter.

6. ——: **Manslaughter: Defining Heat of Passion and Reasonable Provocation: Amended Statute.** Under the statute (Sec. 4468, R.

State v. Gore.

S. 1909) as it stood prior to 1919, which declared that an act "which would be manslaughter at common law," etc., it was necessary to define the words "in a heat of passion," since "heat of passion" was at common law a necessary element of manslaughter; but the Act of 1919 (Laws 1919, p. 256; Sec. 3236, R. S. 1919) abolished all degrees of manslaughter, and declared that "every killing of a human being by the act, procurement or culpable negligence of another, not herein declared to be murder or excusable or justifiable homicide, shall be deemed manslaughter," and said statutory definition does away with "heat of passion" as a necessary element of the crime, and such element need no longer be included in an instruction enumerating the facts necessary for the jury to find in order to return a verdict finding defendant guilty of manslaughter, and it not being necessary to include the words in the instruction it is not error to fail to define them. And the same is true of the words "reasonable provocation;" it no longer being necessary to include them in an instruction on manslaughter, it is not error to fail to define them.

7. ———: Self-Defense: Appearances: Great Bodily Injury: Read as a Whole. If an instruction as a whole properly defines self-defense under the facts in evidence, the giving of it will not be reversible error, although it cannot be unqualifiedly approved. Where the instruction in its first clause conditioned defendant's right to shoot deceased on the ground that "the deceased was about to do her some great bodily injury," it will not be condemned as reversible error, if in its subsequent clauses it clearly states she had the right to act upon appearances.

8. ———: Dying Declaration: Comment. It is error to instruct that the dying declaration should be received with the same degree of credit as the testimony of declarant would be if he had been examined under oath as a witness, and, on the other, defendant is not entitled to an instruction that the dying declaration is not entitled to the same weight as the jury would give the testimony of declarant had he testified as a witness in court, since such instructions are an improper comment on the evidence; and an instruction asked by defendant telling the jury that "you should consider that such statement was not made in the presence of the defendant; that the declarant was not subject to cross-examination by the defendant or her counsel; that the jury had no opportunity to observe the manner of the deceased at the time such statement was made, and that he is not subject to prosecution for perjury if such statement or any part thereof is untrue," should be refused, both as an unwarranted comment on the evidence, and as an attempt to authorize the jury to treat lightly and to minimize the statements of facts contained in the declaration.

9. ——: ——: ——: **Proper Instruction.** An instruction on a dying declaration telling the jury to give to it "that weight which you think it ought to have when considered in connection with all other facts and circumstances in evidence" fully covers the law governing the weight to be given such declarations, is not a comment on the evidence, authorizes defendant's counsel to argue fully the facts that it was not made in her presence, that declarant was not subject to cross-examination, that he was not subject to prosecution for perjury, and that the jury had no opportunity to observe his manner or condition while making the dying statement, and is all defendant is entitled to.

10. ——: ——: **Admissibility.** An instruction which would submit to the jury the question whether the statement of deceased was a dying declaration is properly refused.

11. **ARGUMENT TO JURY: Woman of the World.** A reference to the defendant as "a woman of the world" by the prosecuting attorney in his closing argument to the jury, if the record shows that the court sustained an objection to the remark and no request for reprimand of counsel was made, is not properly preserved for review.

Appeal from Buchanan Circuit Court.—*Hon. Wm. H. Utz,* Judge.

Affirmed.

*Mytton & Parkinson* and *Miles Elliott* for appellant.

(1) The defendant was deprived of the right to a trial by a fair and impartial jury, in that the court, over the objection of defendant, excused legal, competent veniremen, upon the ground that they had conscientious scruples against inflicting the death penalty, and refused to excuse other veniremen who had such conscientious scruples. (2) The court erred in admitting in evidence the alleged dying declaration of deceased: (a) Because there was no proper showing that said statement was made under a consciousness and conviction of impending death and after the abandonment of all hope of recovery; (b) Because there was no showing that the alleged dying declaration was a complete and correct statement of what the deceased said, on the occasion when the

statement was taken, relating to the alleged offense. State v. Johnson, 118 Mo. 504; Brown v. State, 32 Miss. 433. (3) The failure to define the terms "justifiable homicide" and "excusable homicide" was error. State v. Reed, 154 Mo. 122; State v. Rider, 95 Mo. 474; State v. Hickkam, 95 Mo. 322. (4) The court erred in failing to define the terms "heat of passion" and "lawful provocation," as used in the instructions. State v. Strong, 153 Mo. 548; State v. Reed, 154 Mo. 122; State v. Grugin, 147 Mo. 39. (5) Instruction 7 given by the court was erroneous: (a) Because it told the jury, in effect, that any killing not murder was manslaughter; (b) because it failed to tell the jury, and misled the jury as to what constituted "heat of passion;" and, (c) because it infringed the defendant's right of self-defense. State v. Darling, 202 Mo. 150; State v. Constitino, 181 S. W. 1155; State v. Banks, 258 Mo. 479. (6) Instruction 8 given by the court was erroneous because it infringed defendant's right of self-defense, and because it so maximized every restriction on the right of self-defense and so minimized every right of defendant that it was prejudicial. State v. Hollingsworth, 156 Mo. 187; State v. Darling, 202 Mo. 150; State v. Constitino, 181 S. W. 1155; State v. Banks, 258 Mo. 479. (7) The remarks of the prosecuting attorney in his closing argument that defendant was a "woman of the world," when there was not a scintilla of evidence to that effect, was so prejudicial as to constitute error. State v. Clancy, 225 Mo. 660.

*Jesse W. Barrett,* Attorney-General, and *Albert Miller,* Assistant Attorney-General, for respondent.

(1) The motion to quash was properly overruled. (a) The information charges defendant with murder in the first degree, and is sufficient in form and substance. It alleges all of the statutory elements necessary to constitute that crime and follows the approved form. State v. Rozell, 225 S. W. 931; State v. Conley, 255 Mo. 187; State v. Barker, 216 Mo. 543; State v. Clay, 201 Mo.

681; State v. Kindred, 148 Mo. 279; State v. Turlington, 102 Mo. 651.   (b)   Motion to quash was filed after defendant had entered his plea of not guilty.   Said plea was not withdrawn and the motion was, therefore, out of time.   State v. Reeves, 97 Mo. 672.   (c)   The information is properly verified by oath of the prosecuting attorney.   Section 3849, R. S. 1919; State v. Carroll, 232 S. W. 701; State v. Bonner, 178 Mo. 431; State v. Schnettler, 181 Mo. 184; State v. Brown, 181 Mo. 192; State v. Brock, 186 Mo. 457; State v. Anderson, 252 Mo. 83; State v. Stewart, 274 Mo. 649.   (d)   Where, in the verification of an information the words, ''prosecuting attorney'' are omitted after the name of that officer appearing in the oath, that error is immaterial and constitutes no ground to quash.   State v. Ferguson, 278 Mo. 119; State v. Kinney, 81 Mo. 101; State v. Carroll, 232 S. W. 699.   (e)   The information, on its face, shows that it is based upon the oath of the prosecuting attorney.   State v. Salts, 263 Mo. 304.   (f)   Stephen K. Owen is a competent witness in this case, and the information may be based upon the oath of such witness.   Sec. 3849, R. S. 1919.   (g)   The omission to put the words, ''prosecuting attorney'' after the name ''Stephen K. Owen,'' in the oath appended to the information filed herein, did not mislead appellant or prejudice his rights upon the merits of the case.   State v. Brock, 186 Mo. 457; State v. Kinney, 81 Mo. 101; State v. Ferguson, 278 Mo. 119; State v. Carroll, 232 S. W. 699.   (2)   The court did not commit error in excusing veniremen upon the ground that they had conscientious scruples against inflicting the death penalty.   State v. David, 131 Mo. 390; State v. Bauerle, 145 Mo. 16.   (3)   The court did not commit error in admitting in evidence the dying declaration of deceased.   (a)   It appears that when the declarations were made deceased believed that death was impending and that there was no hope of recovery.   State v. Lewis, 264 Mo. 428; State v. Colvin, 226 Mo. 483; State v. Kelleher, 201 Mo. 638; State v. Dipley, 242 Mo. 477; State v. Lovell, 235 Mo. 357; State v. Barnes, 204 S. W. 265; State v. Powell, 217 S. W. 37; State v. Hostetter, 222 S. W. 752.

(b) The cause of declarant's death was the subject of the declaration. State v. Lewis, 264 Mo. 420; State v. Horn, 204 Mo. 549; State v. Spivey, 191 Mo. 110; State v. Parker, 172 Mo. 202; State v. Draper, 65 Mo. 340. (4) The court did not err in failing to define "heat of passion" as that term is used in Instruction 7. State v. Pleake, 177 S. W. 358. (5) The court did not err in failing to define the term "justifiable" or "excusable" homicide. State v. Jacobs, 152 Mo. 565. (6) The court did not err in giving Instruction 8, touching the subject-matter of self-defense. State v. Harper, 149 Mo. 525; State v. Hollingsworth, 156 Mo. 178 (7) The remark of the prosecuting attorney in his closing argument that defendant was "a woman of the world," was not reversible error. (a) The point has not been saved by proper objections made and timely exceptions. State v. Rasco, 239 Mo. 579; State v. McMullin, 170 Mo. 632; State v. Baker, 209 Mo. 444. (b) The vice, if any, was cured by the court rebuking the prosecuting attorney. State v. Baker, 209 Mo. 444.

DAVID E. BLAIR, J.—Defendant was tried in the Buchanan County Circuit Court upon an information charging her with murder in the first degree and, upon conviction by the jury of the crime of manslaghter and sentence upon verdict to imprisonment in the penitentiary for a period of two years, she has appealed.

Defendant was charged with killing her husband, one Cecil Gore. They were living together as husband and wife and conducted a restaurant in the city of St. Joseph. Said restaurant was composed of a dining room and three other rooms. One of these rooms was used as a bedroom, and contained a couch and other furniture. The deceased was shot and wounded in said restaurant about two o'clock p. m. on May 6, 1920, and died a week later. The shooting occurred in said bedroom. Immediately following the shooting the defendant was seen standing in the bedroom with a gun in her hand looking at deceased, who was lying on the floor. The only other

person in the restaurant at the time of the shooting was one Charlie Thomas, who took the gun from the defendant after the shooting. Only one shot was fired. On the evening of the shooting about nine o'clock the deceased made a dying statement covering the shooting. Said statement is set out in full in the opinion.

The testimony tends to show that about April 20, 1920, the deceased and the defendant had some trouble, and at that time the defendant pointed a pistol at the deceased. The witness Charlie Thomas was present at that time and seized the pistol. The presence of Charlie Thomas about the restaurant seems to have been resented by the deceased, although it does not clearly appear from the testimony that the trouble resulting in the shooting grew out of that incident. The dying declaration of deceased tends to show that there was no trouble between himself and the defendant at the time of and immediately prior to the shooting. His statement is that he and his wife had been sitting in the room talking, and he started to go to his home on 27th Street, and went into the restaurant to get his hat and immediately returned to the room, and that as he got into the room the defendant reached for the gun and, without saying a word, shot him; that he did not attempt to strike or threaten her in any way; that he did not have any weapon in his hand or on his person, and that they had had no quarrel on the day of the shooting.

The defendant, as a witness in her own behalf, testified that on the day of the shooting she went into the room about 1:30 o'clock in the afternoon, after she had finished her work and while lying on the bed the deceased came in, closed the door, laid down on the bed and tried to force sexual attentions upon her; that he was diseased; that one Dr. Barnes had told her that he had gonorrhea; that the defendant and the deceased scuffled on the bed and struggled about thirty minutes; that defendant jumped up off the bed, and deceased jumped up and tried to grab her, and she grabbed the gun; that the pistol was lying on "a little business" right by the bed, in plain

view of both the deceased and defendant; that as defendant grabbed the pistol deceased tried to grab her before she grabbed the pistol; that he grabbed her arms and she fired; that before that he had said "By God, I will;" that defendant had the pistol in her hand at the time deceased had hold of her; that at the time the shot was fired she was in fear of bodily injury; that he had hold of both her arms at that time; that she did not know what caused the pistol to be discharged.

On cross-examination defendant testified that she was forty years old; that the reason she shot her husband was that she thought he was going to have sexual intercourse with her, and she could not protect herself in any other way; that she did not scream or try to get away; that she did not intend to take his life, but intended to shoot if necessary to protect herself; that deceased weighed 197 pounds and was twenty-two years old when they were married four years previously. Defendant also offered witnesses whose testimony tended to show that they had seen about the premises and in deceased's possession implements and medicine usually used in the treatment of venereal disease. Such further facts as are deemed necessary to a full understanding of the case will be discussed in the opinion.

I.   The motion for a new trial assails the sufficiency of the information. No assignment of error on this point is made in appellant's brief. We have examined

Information.   the information and find no just criticism can be made against the charge contained in the body thereof.

In the verification the prosecuting attorney did not describe himself as prosecuting attorney. He was so described in the body of the information and at the conclusion thereof signed himself as such. Section 3849, Revised Statutes 1919, only requires verification by the prosecuting attorney and makes no requirement that he describe himself as such. The information is clearly suf-

ficient. [State v. Carroll, 232 S. W. l. c. 701, and cases cited.]

II. The examination of jurors on their *voir dire* disclosed that a number of them had conscientious scruples against the infliction of the death penalty. The State challenged some of these and did not challenge others possessing such scruples. Appellant complains that jurors Glassco, Ernst, Munger, Sanders and others possessing such conscientious scruples were not challenged by the State and that the trial court erred in overruling a subsequent challenge to such jurors made by defendant on the same ground.

Jurors: Conscientious Scruples.

Defendant's counsel does not point out the place in the record where any such challenge appears and we have not found any such record. However, we note an objection made to the court because counsel for the State challenged some jurors for this reason and did not make such challenge as to others. Even if challenge was made on that account and was overruled, we do not think defendant is in a position to complain. Section 4012, Revised Statutes 1919, provides, ''Persons whose opinions are such as to preclude them from finding any defendant guilty of an offense punishable with death, shall not be allowed or compelled to serve as jurors on the trial of an indictment for any offense punishable with death.'' Such provision is for the benefit of the State. If persons possessing such opinions are permitted to remain on the trial panel, their presence precludes in advance the possibility of the death penalty being imposed. If the State sees fit to waive this disqualification and the juror himself does not insist upon being excused, the defendant cannot complain. It has always been considered that it is to the interest of defendant to have such jurors left on the panel when being tried for first degree murder.

We are not cited to any cases in our own State where this point is considered and our examination has not disclosed any such. It has been held in other states

that the defendant cannot justly complain on such ground. The Kansas statute provides that no person who believes the punishment fixed by law is too severe "shall be sworn as a juror." It was held in State v. Vogan, 56 Kan. 61, that it was not error to overrule defendant's challenge made under said statute. The Alabama statute provides that where jurors had fixed opinions against capital or penitentiary punishments "it is good cause for challenge by the State." In Murphy v. State, 37 Ala. 142, it was held that the overruling of defendant's challenge on this ground was not error. A difference between the Alabama statute and our own is noted. See also State v. Compagnet, 21 So. (La.) 46, where the same ruling is made, but in that case the statute is not quoted. The trial court did not err in overruling defendant's challenge to said jurors.

III. Appellant contends that the statement signed by deceased was improperly admitted in evidence as his dying declaration. After certain parts **Dying Declaration.** thereof had been excluded by the court the following statement was admitted in evidence:

"I, Cecil Gore, realizing that I will die do make this my dying statement. On Thursday afternoon May 6th, 1920, I was in the room in back of my restaurant at 1714½ Commercial Street my wife Etta being in the room at the same time. We had been sitting in the room talking a few minutes when I said that I was going out to my home on 27th St. and started to get my hat and went into the restaurant and immediately went back into the room and as I got into the room my wife reached for the gun that was over on the stand in the room and without saying a word she shot me. I did not attempt at any time to strike her nor did I threaten her in any manner. I did not have any weapon in my hand or on my person and I did not reach for my pockets or raise my hands in any

threatening manner against her. Did not have a quarrel today or at the time of the shooting.

"CECIL GORE.

"Witnesses:

"T. A. JOHNSON,
"DR. W. W. GRAY;
"MISS ETHEL SMITH."

The objection is made that the evidence does not show that deceased realized that death was imminent and impending. Witness Dr. Gray testified that he had advised deceased he could not recover, and that the deceased said that he "believed he was going to die." Again said witness testified that deceased said he "thought he was going to die," but he finally testified that deceased said he "was going to die."

In State v. Nocton, 121 Mo. l. c. 550, SHERWOOD, J., laid down the rule governing the admissibility of dying declarations, which has been consistently followed in numerous cases since. We quote from his admirable statement as follows:

"A declaration may be received in evidence even without such a formal statement. Thus, though 'it is essential to the admissibility of these declarations, and is a preliminary fact to be proved by the party offering them in evidence, that they were made under a sense of impending death; but it is not necessary that they should be stated, at the time, to be so made. It is enough, if it satisfactorily appears, in any mode, that they were made under that sanction; whether it be directly proved by the express language of the declarant, or be inferred from his evident danger, or the opinions of the medical or other attendants, stated to him, or from his conduct, or other circumstances of the case, all of which are resorted to, in order to ascertain the state of the declarant's mind. The length of time which elapsed between the declaration and the death of the declarant furnishes no rule for the admission or rejection of the evidence; though, in the absence of better testimony, it may serve as one of the exponents of the deceased's belief, that his dissolution

was, or was not, impending. It is the impression of almost immediate dissolution, and not the rapid succession of death, in point of fact, that renders the testimony admissible.' [1 Greenleaf on Ev. (14 Ed.) sec. 158; 3 Russell on Crimes (9 Am. Ed.) 250; 6 Am. and Eng Ency. Law, p. 108 et seq., and cases cited.] On these grounds, we rule this point in favor of the State.''

This statement of the rule has been approved in State v. Colvin, 226 Mo. 1. c. 482; State v. Kelleher, 201 Mo. 1. c. 637, and other cases.

The State apparently had some difficulty in getting Dr. Gray to state definitely that deceased said he was ''going to die.'' The written statement of deceased included this expression: ''Realizing that I will die.'' Under the rule quoted and the authorities cited, we hold that the dying statement was properly admitted in evidence. Nor does the fact that the deceased lived a number of days after the making of the statement affect its admissibility in evidence. [State v. Lewis, 264 Mo. 1. c. 427.]

Appellant further insists that the statement should not have been admitted as deceased's dying declaration because there was no showing that the statement contained or purported to contain all that was material to the issues stated by declarant at the time it was made. Dr. Gray testified that Mr. King wrote down the questions and answers as given. In this he is evidently mistaken, but, as he says he did not read the statement, he might easily have understood the statement was being taken in that manner. However, he testified that the statement was read to the deceased and that he signed it immediately after it was read to him. This testimony was sufficient to make the signed statement admissible in evidence. The fact that the witness was unable to detail all that was said by declarant at the time does not affect its admissibility. The statement of deceased is a terse, clear and fairly complete recital of the essential facts and circumstances attending the shooting and is not subject to the objection that it is fragmentary.

IV.   Defendant complains of error in the giving of instruction numbered 7, because it told the jury in effect that any killing not murder was manslaughter, because it failed to tell the jury what constituted heat of passion and justifiable and excusable homicide, and because it infringed the defendant's right of self-defense.   Said instruction is as follows:

Manslaughter.

"The court instructs the jury that manslaughter. is the killing of a human being not herein declared to be murder or excusable or justifiable homicide; and the court instructs the jury that if you find and believe from the evidence that the defendant killed the deceased while in the heat of passion, on a reasonable provocation, without malice and without premeditation, as these terms are hereinbefore explained, and under circumstances that is not justifiable or excusable homicide, as defined in other instructions, but that defendant in a sudden passion, on a reasonable provocation, intentionally shot and killed the deceased, without malice or premeditation, and not in the necessary defense of her person, then the jury should find her guilty of manslaughter," etc.

Taking up the last criticism first, we are unable to see how the instruction infringed the defendant's right of self-defense and reference to the language used sufficiently disposes of this criticism.   Other instructions sufficiently submitted the question of self-defense.

The instruction is said to be erroneous in failing to define the terms "justifiable or excusable homicide," "heat of passion," and lawful ("reasonable") provocation.   Instruction No. 8 told the jury under what circumstances the killing of the deceased was justifiable, that is, if it was done in self-defense.   Instruction No. 9 told the jury under what circumstances the killing should be regarded as excusable, that is, if it was accidental.

This instruction simply followed the language of the statute defining manslaughter, which excludes killing by murder and under circumstances that are not justifiable or excusable.

The failure to define the words "heat of passion" and "reasonable provocation" necessitates examination of the statute. As the statute read prior to 1919 the facts and evidence in this case would have required an instruction on manslaughter in the fourth degree, which was defined as follows:

"Every other killing of a human being by the act, procurement or culpable negligence of another, which would be manslaughter at the common law, and which is not excusable or justifiable, or is not declared in this chapter to be manslaughter in some other degree, shall be deemed manslaughter in the fourth degree." [Sec. 4468, R. S. 1909.]

The reference in said statute to manslaughter at common law made necessary the definition of the elements of common-law manslaughter, including the words "in heat of passion." The failure to define such words has been repeatedly held to be error in instructions on manslaughter in the fourth degree. For example, see State v. Skaggs, 159 Mo. 581; State v. Cariou, 266 Mo. l. c. 90.

In 1919 the General Assembly repealed Sections 4454 to 4469, both inclusive, and enacted new sections in lieu thereof (Laws 1919, p. 256), thereby abolishing all degrees of manslaughter and defining manslaughter as follows:

"Every killing of a human being by the act, procurement or culpable negligence of another, not herein declared to be murder or excusable or justifiable homicide, shall be deemed manslaughter." [Sec. 3236, R. S. 1919.]

We have heretofore held that this act abolished all degrees of manslaughter. [State v. Bird, 228 S. W. 751.]

All reference to manslaughter at the common law was omitted in the Act of 1919. Every killing of a human being is now manslaughter, unless done deliberately, premeditatedly or maliciously or under circumstances found by the jury to be justifiable or excusable. This statutory definition does away with "heat of passion" as a necessary element of the crime and such element need

no longer be included in an instruction defining the facts necessary for the jury to find in order to return a verdict of guilty of manslaughter.

Said Instruction No. 7 defining manslaughter excluded first and second degree murder and justifiable and excusable homicide and followed the language of the statute and is sufficient. The elements which it is necessary to consider in determining whether defendant was guilty of manslaughter were properly defined. The elements of ''heat of passion'' and ''reasonable provocation'' were unnecessarily included in the instruction and the failure to define those terms was not error.

What we have said is in line with the position taken by the Supreme Court of Florida. That State has a statute on manslaughter almost identical with our Act of 1919, and reads as follows:

''The killing of a human being by the act, procurement or culpable negligence of another, in cases where such killing shall not be justifiable or excusable homicide nor murder, according to the provisions of this article, shall be deemed manslaughter and shall be punished.'' etc. [General Statutes of Florida (1906) sec. 3209; Revised Statutes, sec. 2384.]

In Driggers v. State, 38 Fla. 7, l. c. 16, it was said:

''Another ground of the motion for new trial is, that the court erred in not defining manslaughter. We find that this assignment has no basis in fact, as the judge in his fifth charge in writing defined manslaughter in the exact language of the statute. [Sec. 2384, Rev. Stat.] And the giving of this statutory definition of manslaughter is also assigned as error. What we have said above in reference to the giving of the definition of justifiable homicide in the language of the statute applies also to this exception, and disposes of it in favor of the correctness of the charge.''

The trial court had previously defined ''justifiable homicide'' in the exact language of the Florida statute. [Sec. 2384, Rev. Stat.] Exception had been taken to this, and the Supreme Court approved the definition and held

that it would have been error if the trial court had substantially changed the language of the statute in any way.

For the reasons above stated we overrule the assignment of error as to instruction numbered 7.

V. Appellant claims that instruction numbered 8 on self-defense is erroneous. It is as follows:

"The court instructs the jury that if you find and believe from the evidence that the defendant shot and killed Cecil Gore, and that, at the time the defendant killed said deceased Cecil Gore, *the deceased was about to do her some great bodily injury,* then the defendant had the right to shoot the deceased in her own defense. The court further instructs the jury, however, that it is not necessary that the danger should have been actual or about to fall on her, but it is necessary for her to have believed it, and that there should have been, at the time she shot and killed the deceased, reasonable cause for such belief. It is for you to say, from the evidence in the case, whether the defendant did believe and had reasonable cause to believe that such impending harm, at the time she shot and killed the deceased, was about to fall on her. If, as a fact, she did not have reasonable cause to believe that such danger was impending at the time she shot and killed the deceased, then she is not justifiable; her believing herself in danger is not sufficient; she must have had reasonable cause to believe it; and of that, you are to determine from all the facts and circumstances in the case."

**Self-Defense.**

The complaint goes to the clause we have italicized and the criticism is that the instruction tends to deprive defendant of the right to act on appearances. The instruction as a whole is not subject to such criticism and properly defines defendant's right of self-defense under the facts in evidence. An instruction should not be condemned for failure to state the law fully in any single sentence, if it correctly states the law when taken as a complete instruction. The first sentence of the instruc-

tion does not fully or properly declare the law that defendant may act on appearances, but such right is fully stated in the remaining portion of the instruction and there is no contradiction between the first sentence and the remainder of the instruction.

The instruction contains the very qualification omitted in State v. Hollingsworth, 156 Mo. l. c. 187, which resulted in a reversal of that case. The same defect that appeared in the Hollingsworth Case existed in the instruction on self-defense in State v. Darling, 202 Mo. 150. The jury in that case might have concluded that they must find that the danger actually existed. In State v. Banks, 258 Mo. 479, l. c. 491, the use of the word "unnecessarily" in the self-defense instruction is condemned. It was there used in flat contradiction of a statement in the preceding sentence in the very same instruction which told the jury that defendant had the right to shoot "if apparently necessary to save defendant."

In State v. Constitino, 181 S. W. l. c. 1157, criticism is made of the first part of a self-defense instruction which "appears to convey the idea that the danger should have been real," and the suggestion was made that the instruction should be modified on a retrial. The judgment was reversed on other grounds. The opinion stated that "this imperfection is possibly overcome when the instruction is read as a whole," citing State v. Miller, 264 Mo. 395. An examination of the record in the Constitino Case in our files shows that the first clause of the criticised instruction is practically the first sentence of · Instruction No. 8 in this case and reads as follows: "The court instructs the jury, that if you find and believe from the evidence that defendant cut and killed the deceased, and at the time he cut him the deceased was about to kill defendant or to do him some great bodily injury, then he had the right to cut in his own defense;" etc. The remainder of the instruction, like Instruction No. 8 before us, then properly sets out the law that defendant had the right to act upon appearances. The opinion does not

condemn the instruction as reversible error and the criticism therein made cannot be regarded as controlling here. especially in view of the ruling in State v. Miller, supra, See also State v. McQuitty, 237 Mo. 1. c. 236.

We conclude that the giving of instruction numbered 8 was not reversible error. Taken as a whole the instruction properly declares the law of self-defense. However, the instruction in this form cannot be unqualifiedly approved as a model.

VI. Appellant complains in her motion for new trial and in the assignment of errors of the refusal of instructions asked by her and marked A, B, C, D, E and F. The printed argument does not cover such assignment and no cases are cited for our consideration. "A" was covered by Instruction 9½, which was also asked by defendant and fully covered the weight to be given by the dying declaration. Said Instruction 9½ is as follows:

Instructions: Dying Declarations.

"The statement read to you as the dying declaration of deceased should be received by you as such declaration, but because it is a dying declaration you are not necessarily bound to believe it, but you will give it that weight which you think it ought to have when considered with all the other facts and circumstances in evidence."

The first sentence of refused Instruction A is substantially the same as Instruction 9½. It concludes as follows:

"You should consider, however, that such statement was not made in the presence of the defendant; that the declarant was not subject to cross-examination by the defendant or counsel for her; that the jury had no opportunity to observe the manner of the deceased at the time such statement was made, and that he is not subject to prosecution for perjury if such statement or any part thereof is untrue."

This portion of the instruction is an improper comment on the dying declaration. This court has held that it is error to instruct the jury that the dying declaration

should be received with the same degree of credit as the testimony of declarant would be if he had been examined under oath as a witness. [See State v. McCanon, 51 Mo. 160; State v. Vansant, 80 Mo. 67.] It has also held that defendant is not entitled to an instruction that dying declarations are *not* entitled to the same weight as the jury would give the testimony of declarant had he testified as a witness in court. [See State v. Reed, 137 Mo. l. c. 138; also State v. Dipley, 242 Mo. l. c. 478.]

The above cases condemn such instruction as a comment on the evidence. Instruction A called particular attention to the dying declaration and authorized the jury to treat lightly and minimize the effect of the evidence contained therein and in effect to do the very thing condemned in the Reed and Dipley cases, supra, to-wit, that they should not give it the same weight they would give to the testimony of declarant testifying as a witness under oath. The dying declaration is used as and for the testimony of the deceased. Its weight is solely for the jury.

We have found no case in our reports where the point has been considered from this angle. In State v. McMullins, 170 Mo. l. c. 627, a quite similar instruction given by the court *at the request of defendant* is set out in the opinion. No specific comment on such instruction is made in the opinion. In discussing the instructions as a whole it was said: "If they have any fault, it is because too favorable to defendant." There is not a word in that case specifically approving the instruction referred to, and no reversal was possible on the ground of error therein because it was given at the request of defendant. The instruction, given in the McMullin Case and asked in defendant's Instruction A in this case, is just as much a comment on the testimony as if applied to any living witness testifying in the trial, and is just as improper. It is true this court in State v. Crone, 209 Mo. 316, l. c. 328, approved an instruction containing language similar to Instruction A in this case. It was there given at the request of defendant. The court was

there determining whether the court submitted the *admissibility* of the dying declaration to the jury. The instruction was not considered from the standpoint of comment upon the testimony.

So in State v. Hendricks, 172 Mo. 1. c. 665, an instruction quite similar to Instruction A was approved. It was asked by defendant and given with the addition of the words "if any." This modification was attacked by defendant and was held proper. The correctness of the instruction in the respect here under consideration was not discussed.

It will be noted that in the Hendricks Case defendant asked a cautionary instruction as to the testimony of witnesses repeating alleged dying statements of deceased and this instruction was refused by the trial court. In approving the ruling, Fox, J., said:

"As to instruction numbered 3 requested by defendants, it will be noted that appellants insist that the same rule should apply to the repetition by the witnesses (as) of the statements of the deceased. This is not true; the same reasons do not exist for applying the same to the repetition of dying declarations. Dying declarations are not to be classed with simply casual conversations of the defendants. These declarations are of a more solemn character and are usually made only a short time before the witnesses are called upon to repeat them in the trial of the case. There was no error in the refusal of this instruction."

The word "as" which we have put in parenthesis is evidently unintentionally used.

VII. Instruction 9½ fully covered the law governing the weight to be given the dying declaration. It told the jury to give it "that weight which you think it ought to have when considered in connection with all the other facts and circumstances in evidence." This **Proper Instruction.** instruction is free from comment on the testimony and authorized counsel to argue fully the facts that such statement was not made in the pres-

292 Mo.—13

ence of the defendant; that declarant was not subject to cross-examination; that declarant was not subject to prosecution for perjury and that the jury had no opportunity to observe the manner or condition of the declarant while making the statement. Instruction $9\frac{1}{2}$ gave defendant all she was entitled to.

In State v. Dipley, supra, the defendant asked the court to declare the law upon dying declarations and no instruction whatever was given, and this court held that the trial court did not err in refusing to give such instruction. The court apparently puts its ruling upon the ground that such an instruction would have been a comment on the evidence. We have examined the files in the Dipley Case and find that defendant did not offer any instruction on dying declarations and the court gave none. Therefore the ruling was not based on the impropriety of any particular instruction.

The court did not err in refusing to give Instruction A.

VIII. Instruction F would have submitted to the jury the question of whether the statement of the deceased is really a dying declaration and is therefore improper. Instructions B, C, D and E are fully Questions of Law. covered in the instructions given by the court and for that reason were properly refused. We find no error in the refusal of said instructions.

IX. The reference to defendant as "a woman of the world" by the prosecuting attorney in his closing argument is urged as error. The record shows that the trial court sustained defendant's objection to the remark. No request for reprimand of counsel was made and the point is not properly before us for review. [State v. Rasco, 239 Mo. 535, l. c. 579.]

Finding no reversible error in the record, the judgment of the trial court is affirmed. *Higbee, P. J.,* concurs; *Walker, J.,* concurs in the result.