**STATE of Missouri, Respondent,**

v.

**James Wilbert RICHARDSON, Appellant.**

No. 49333.

Supreme Court of Missouri,

Division No. 2.

Feb. 11, 1963.

Charles R. Burt, Columbia, for appellant.

Thomas F. Eagleton, Atty. Gen., Frank P. Motherway, Sp. Asst. Atty. Gen., Jefferson City, for respondent.

BARRETT, Commissioner.

Upon a charge of murder in the second degree, James W. Richardson, age 19, had been found guilty of manslaughter and sentenced to ten years' imprisonment. The appellant's trial counsel timely filed a motion for a new trial setting forth, together with numerous subdivisions, sixteen specifications of error. A large number of these specifications of error are so lacking in detailed particularity or in their failure to set forth the "specific grounds or causes therefor" (S.Ct. Rule 27.20, V.A. M.R.) that they do not present reviewable questions. It is not necessary to again recite in detail these assignments and point out the particular respects in which they are deficient, the insufficiency of these and similar assignments is illustrated by the following list of cases. State v. Reed, Mo., 298 S.W.2d 426; State v. Miller, Mo., 360 S.W.2d 633; State v. Gray, Mo., 360 S.W. 2d 642; State v. Howard, Mo., 360 S.W.2d 718. The appellant is not represented by counsel upon this appeal and for that reason the court considers all of the good and sufficient assignments of error in his motion for new trial (S.Ct. Rule 27.20) as well as those matters necessarily involved and reviewable by the court "upon the record before it." S.Ct. Rule 28.02.

Noting very briefly, the facts were that on Saturday, May 6, 1961, the appellant James Richardson worked until 5 o'clock. After work, according to his own account, he went home, ate, took a nap, and went to the home of a friend. About 7:30 he went to the "Do Drop Inn" and there he danced and drank wine and beer until about 12:30. Then he went up on "the Strip" and found a ride out to George Jones' "400 Club" south of Columbia. He arrived at the 400 Club about 1 o'clock and almost immediately had what he called "an argument" with Curtis Hickam, but, he said, "I don't remember what brought it on." In the course of this argument, according to James, Hickam told Raymond Glasgow "to get his pipe out of his car for him." James' Uncle Sherman, age 24, intervened to stop the argument with Hickam, and then James said, "I went back out to Glasgow and says, 'Why do you want to go get a pipe after me' and before he could say anything I hit him." James stayed around the 400 Club awhile and asked Paul Walker for his gun because he was afraid "Curt might get me with his pipe." Walker gave James his gun, a semi-automatic .22 caliber, 9 shot revolver, and he caught another ride into town and returned to "the Strip" about 3 o'clock in the morning.

And again according to the appellant, "I got out of the car getting ready to go into Merril Slater's [Do Drop Inn] when Gene Glasgow called me and said 'Hey Richardson, what do you mean going hitting my son?' and before I even had time

**554**

to answer he hit me and I put in two wallops, and he grabbed and I had my hands up like this then he grabbed me and threw me down and started to choke me. Somebody tried to break it up, pulled us up together, he had a hold and Will Richardson, he broke the hold loose and I was standing off in a daze and he come back towards me again so then I shot him." The coroner recovered "3 slugs" from the body of Gene Glasgow, two in the groin and one that severed the right femoral artery causing him to bleed to death, a fourth slug went through the right forearm. James says that he did not intend to kill Glasgow, but he doesn't know why he fired four shots.

■■ These briefly narrated circumstances, favorably stated by the appellant incidentally, obviously support the lesser and included charge (V.A.M.S., § 556.220; State v. Foster, Mo., 338 S.W.2d 892, 896) and finding of manslaughter. V.A.M.S., § 559.020, 559.070, State v. Feltrop, Mo., 343 S.W.2d 36. It may be noted in passing that the evidence favorable to the state would have supported a conviction of murder in the second degree. Furthermore, since the appellant has been found guilty of the lesser offense of manslaughter, he is in no position to complain of the instructions defining and hypothesizing murder in the second degree. State v. Colvin, 226 Mo. 446, 126 S.W. 448.

■ Also in these circumstances the objection to instruction 6 (voluntary and involuntary confession or statement) concerning "an oral or written statement confessing his guilt of the crime charged" is not well taken. It may well be, as suggested by his motion, that in his statements to the police, both oral and written, the appellant has not in terms or technically "confessed his guilt of any crime." Nevertheless, he did relate the facts and, as indicated, even his favorable narration of the circumstances supports the finding of manslaughter. There is in fact no claim that the appellant's admissions or statements were involuntary and in these circumstances the instruction was not confusing or misleading. State v. Stidham, Mo., 305 S.W.2d 7.

■■ The court instructed on self-defense, including the hypothesis that when the defendant shot Glasgow "he had reasonable cause to believe, and did believe, that said Gene Glasgow was about to take his life or to do him some great personal injury." The appellant's evidence of a battery immediately before the shooting was some evidence of provocation and required an instruction on manslaughter (State v. Smart, Mo., 328 S.W.2d 569), but the one given is the conventional self-defense instruction (State v. Robinson, Mo., 255 S.W.2d 798) and was not prejudicially erroneous in its failure to mention that Glasgow "had already attacked this defendant causing him great personal injury." State v. Bradford, 324 Mo. 695, 24 S.W.2d 993, is the case from which no doubt the instruction was taken. The phrase that the deceased "was about to take his life or to do him some great personal injury" did not deprive the appellant of the right to act on appearances (State v. Gore, 292 Mo. 173, 237 S.W. 993), and of course if the jury found his claim of self-defense he was entitled, as the instruction permitted, to an acquittal. 41 C.J.S. Homicide § 395c(5), p. 229. Instruction 8, preceding the instructions on second degree murder and manslaughter, defined "Malice", "Premeditatedly", "Willfully", and "Feloniously". The assignment that the instruction is "confusing, conflicting, contradictory, misleading and inconsistent," if a proper assignment at all, is not helpful. Insofar as the terms, particularly "malice" (26 Am.Jur., Homicide, § 536, p. 528) relate to second degree murder, the appellant is in no position to complain (State v. Foster, supra), otherwise the definitions were as "heretofore uniformly defined by this court" since 1877. State v. Jones, 64 Mo. 391, 395; State v. Colvin, supra.

■ Repeatedly the witnesses all described the deceased lying on the parking lot

alongside his automobile, including the pools and trails of blood from his wounds and in these circumstances the three black and white photographs of the same matters were not manifestly inflamatory and prejudicial. Compare State v. Floyd, Mo., 360 S.W.2d 630. Also the witnesses referred to or employed a plat of the area and thus were testifying "diagramatically" as well as verbally and the presence of the draftsman was not necessary—the witnesses merely used the diagram as a "visual or graphical means" of expressing themselves. Annotation 9 A.L.R.2d 1044, 1047.

The most serious and difficult assignment of error is number 12, "That the Court erred in permitting the Prosecuting Attorney to persistently and repeatedly cross-examine both the State's and the defendant's witnesses concerning acts which occurred while the defendant was a juvenile." In the course of the trial there were several objections to testimony related to this assignment of error, sometimes, however, there were no motions for a mistrial or requests for other specific relief, and it may well be that the assignment is deficient in its lack of "specific grounds or causes therefor." S.Ct.Rule 27.20. Nevertheless, the question the appellant would present is plain enough from even a casual reading of the record. The problem is increasingly important and has not been previously presented at least in this jurisdiction and therefore as a caveat is given passing consideration. James called several witnesses, students, football coaches, and teachers, from Hickman High School to his good reputation for being "a peaceful and law-abiding citizen" and in the cross-examination of the state's witnesses the defendant sometimes attempted to establish his good reputation for "truth and veracity" as well as for peace and quietude. The state, particularly in cross-examination of the witnesses to his good character, repeatedly inquired, for example, "Bob, did you know that he was made a ward of this court for tampering with an automobile in 1957 in August and thereafter [was] sent to the Missouri School for Boy's in Boonville for receiving money gotten in a strongarm robbery?" Sometimes it was objected that this inquiry was "irrelevant, immaterial and improper," sometimes the objection was "This is a juvenile matter" and therefore improper.

By reason of the state's public policy with respect to juveniles and particularly by reason of § 211.271, V.A.M.S., of the juvenile code, it has become settled that the "disposition of a case in juvenile court is not deemed a conviction of a crime by the child charged and is not admissible to affect his credibility as a witness." State v. Tolias, Mo., 326 S.W.2d 329, 333; State v. Coffman, 360 Mo. 782, 230 S.W.2d 761; 98 C.J.S. Witnesses § 507, p. 409. On the other hand, it is equally well established that a so-called character witness may be cross-examined as to good faith rumors and as to facts within his knowledge discreditable to the person to whose good reputation he has testified. 98 C.J.S. Witnesses § 387b, p. 153; State v. Cox, Mo., 333 S.W.2d 46, 49. The problem appellant has attempted to raise is whether the facts of juvenile cases and their disposition may be employed to cast doubt on, test, or discredit a witness to one's good reputation. It is not necessary to a disposition of this appeal to attempt a definitive resolution of this serious and important problem. In addition to the inadequacies of the objections during the trial and the lack of adequately stated grounds or reasons in the motion for a new trial, some of the defendant's witnesses even on direct examination volunteered the information that they had "heard about Boonville before." In other instances defendant's counsel inquired whether the witnesses had "heard others talk about him." The reply was "Yes, I remember I heard about him getting in trouble once when he went to Boonville for six months." In view of all the noted considerations the suggestion for future careful consideration is sufficient; in the particular circumstances of

this record, the appellant is not entitled to a new trial upon this assignment of error. State v. Cowan, Mo., 310 S.W.2d 939, 940.

As indicated, the information is proper in form and appropriately charges the offense of manslaughter, the verdict is likewise proper in form and responsive (V.A.M.S., § 559.140), there was allocution, the sentence and judgment are proper (S.Ct.Rules 27.08, 27.09), and since there are no prejudicial errors upon the record before the court (S. Ct.Rule 28.03) the judgment is affirmed.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.