**STATE of Missouri, Respondent,**

v.

**Troy CLARK, Appellant.**

**No. 52219.**

Supreme Court of Missouri,
Division No. 2.

March 13, 1967.

Robert G. Duncan, Pierce, Duncan, Beitling & Shute, Kansas City, for appellant.

Norman H. Anderson, Atty. Gen., Jefferson City, J. L. Anding, Special Asst. Atty. Gen., Pacific, for respondent.

BARRETT, Commissioner.

A jury found Troy Clark guilty of murder in the second degree and fixed his punishment at 60 years' imprisonment; the trial court reduced the punishment to 45 years' imprisonment and he has appealed.

For eight or nine years Nick and Patricia Russo operated the Hanger Bar at 3800 E. 31st Street. The area residents once predominately white had become predominately Negro and the Russos changed their operation from a public bar or tavern to a private club in which the 1400 or 1500 members were admitted by card for which they paid a yearly membership of fifty cents. On September 3, 1965, about ten o'clock, Mrs. Russo was at the bar, her husband was in the office in a back room and there were three or four patrons, two sitting on stools

at the bar, one about the middle and one at the back. The appellant Clark, a Negro, walked in, sat on a stool at the back end of the bar and asked Mrs. Russo for a beer. She asked for his club membership card and he asked to see the manager. Pat went to the rear and called her husband who came out and at the back end of the bar engaged Clark in conversation, there were no threats or heated words and the witnesses could not hear what they said to one another. They all agree, including Clark, that Nick and Clark started toward the front door, Nick holding onto Clark's arm as if escorting him out. Pat, facing the bar, suddenly yelled "Nick," and Clark whirled with a gun in hand, said "Here's my card, buddy" and fired two shots, one striking Nick in the chest. Pat got a revolver from back of the bar and as Nick held onto Clark and they both fell to the floor fired one shot in their direction and she says that Clark from a kneeling position fired one shot at her. She handed the revolver to Tom Cook and went to call the police. At the second shot by Clark, Ted Harrison hit him over the head with a chair causing him to drop his umbrella and his gun, a .25 caliber Italian-made Delesi-Brescia automatic. Clark did not fall all the way to the floor but as he dropped his gun ran out the front door in a crouched position with Tom Cook in pursuit firing Nick's .32 caliber Smith & Wesson revolver. Clark, one bullet through his right arm and a "grazing wound" on his stomach, was taken to St. Luke's Hospital where he was arrested.

Clark's version of the shooting was that Nick asked for his card and "I tell him 'I don't have a card' and, he say, 'Well, I can't serve you,' he say 'in the first place we don't serve your kind here no way, in the second place we don't serve no niggers at all, in this bar at all.'" Clark says he told him "I just want a beer," but Nick says "Well, let's go. I don't want you in here," and "He grabbed me, you know, by the shoulders, kind of pulled me down to the feet, kind of a motion like trying to throw me out, and I told him, 'Well, I will go, you don't have to push me out. I will be glad to go.'" And he said Nick had "ahold of my whole back, arms and all, he was trying to, like escorted me out" and he said that he told Nick "just move his hands from me. And he didn't—well then I pushed him away, so at that moment, I guess he thought I was fighting or something, then he swung on me and I swung back. * * * Then we just started fighting, just him and I, then all of a sudden a couple more guys jumped in and was helping him. One guy hit me with a chair and one guy was kicking me, I was getting the best of him, and I was trying to get out but the commotion, you know, was—so when I couldn't get away from them, fight and all, this guy, he pulled a pistol—I didn't see the pistol but he just—I felt the shot when he shot me. * * * When I felt the shot, these guys on me, I didn't know what to do, I thought that I was almost dying, and so I thought about this pistol I had and I pulled it. * * * It had about four, four or five shells in it. * * * Well, after I was shot I pulled my pistol and fired, I guess. * * * I just pulled it and fired but everybody was on me * * *. I wasn't aiming at any particular one." He denied firing at Patricia and finally said that he and Nick were about eight inches apart when he fired two shots, the second one, he said, "was kind of an accident because an automatic, when you pull it, it will go off, if you don't know what you are doing, just squeeze it a little, it will go off."

▪ In these briefly narrated circumstances the court instructed the jury upon murder, manslaughter and self-defense. In the trial of his cause and here the appellant has been represented by the same experienced lawyer who urges three assignments of error, two of them directed to Instructions 4 and 8, 4 relating to manslaughter and 8 relating to self-defense. As to Instruction 4 it is urged that it does not include as an element of manslaughter a finding or requirement of "the death of the victim." The state contends, since the appellant Clark was found guilty of murder in the

second degree, that he may not complain of error in the manslaughter instruction. State v. Davis, Mo., 400 S.W.2d 141. And generally that may be true but the appellant here urges that by reason of the assigned error the jury could not have found him guilty of manslaughter, the lesser offense, and therefore he was prejudiced. "If, however, there were errors in the instruction on the lesser offense of manslaughter, possibly there could be ground for complaint on the theory that an erroneous manslaughter instruction prevented the jury from convicting of that lesser crime rather than of murder in the second degree." State v. Brooks, Mo., 360 S.W.2d 622, 628; State v. Aitkens, 352 Mo. 746, 763, 179 S.W.2d 84, 94.

The case upon which the appellant relies as requiring a finding "without a design to effect death, in a heat of passion," State v. Colvin, 226 Mo. 446, 126 S.W. 448, is not too helpful because decided in 1909 when in addition to all other unnecessary complications there were at least three degrees of manslaughter (RSMo 1899, §§ 1821–1829) and as the Colvin case pointed out in second degree manslaughter the words "without a design to effect death" were "the very essence of this offense, this degree of manslaughter, that it must not have been an intentional killing." In 1919, Laws of Mo. 1919, p. 256, these statutes and the degrees of manslaughter were all abolished and thenceforth, so far as material here, manslaughter has been defined as "Every killing of a human being * * * not herein declared to be murder or excusable or justifiable homicide, shall be deemed manslaughter." RSMo 1959, § 559.070, V.A.M.S. And of course under the latter statute there must have been a "death of the victim" but "All reference to manslaughter at the common law was omitted in the act of 1919. Every killing of a human being is now manslaughter unless done deliberately, premeditatedly, or maliciously, or under circumstances found by the jury to be justifiable or excusable. This statutory definition does away with 'heat of passion' as a necessary element of the crime, and such

element need no longer be included in an instruction defining the facts necessary for the jury to find in order to return a verdict of guilty of manslaughter. Said Instruction No. 7 defining manslaughter excluded first and second degree murder and justifiable and excusable homicide and followed the language of the statute and is sufficient." State v. Gore, 292 Mo. 173, 187–188, 237 S.W. 993, 997.

■ Perhaps this alone is sufficient to dispose of the appellant's claim of error, if not it must be kept in mind that his basic claim is that the instruction is erroneous in "not including as an element the death of the victim." This despite the fact that in his brief "The appellant admitted the killing of Nick J. Russo" and thus while he claims it is a necessary finding to the degree of the offense, "the death of the victim" was not a disputed or questioned issue. Then too Instruction 4 begins " 'Manslaughter' is the killing of a human being not herein declared to be murder or excusable or justifiable homicide" and then after hypothesizing the assault with a gun "under such circumstances that it is not excusable or justifiable homicide." Subsequently "justifiable homicide" and "excusable homicide" are defined. In these circumstances it is difficult to believe that the jury was misled or confused and failed to find the appellant guilty of the lesser offense of manslaughter because in specific terms it did not require a finding of "the death of the victim."

■ In this connection the appellant's third assignment is that Instructions 4 and 8 defining "justifiable homicide," "excusable homicide" and "self-defense" are erroneous in "not conforming with the statutory definitions" of these terms, RSMo 1959, §§ 559.-040 and 559.050, V.A.M.S. In the first place the appellant cites no case or authority other than the mere language of the statutes in support of this claim. And then he points to the definition of murder in the second degree (RSMo 1959, § 559.020, V.A.M.S.) and argues, despite the quotation from State v. Gore above, that the court

was bound to "instruct on both common law and statutory excusable or justifiable homicide." The assignment and assertions are not self-demonstrative and in the absence of some demonstration of prejudice "(i)t is not necessary to define expressions in general use such as these ("excusable"). No explanation could make their meaning clearer." State v. Cade, 326 Mo. 1132, 1138, 34 S.W.2d 82, 84; State v. Gadwood, 342 Mo. 466, 494–495, 116 S.W.2d 42, 58–59; State v. Brookshire, Mo., 353 S.W.2d 681, 689.

▮ The appellant's other assignment is that the court erred in not declaring a mistrial because of the prosecuting attorney's prejudicial argument to the jury that "he had filed the charge that he thought appellant was guilty of." In connection with this assignment as with his other points appellant points to five or six other matters to which there were no objections, or objections were sustained and to other matters that were legitimate subjects of argument and these matters are not "so glaringly offensive and prejudicial" as to demand action by the court without objection and are not open questions here. State v. Goodwin, Mo., 352 S.W.2d 614, 620. In the second place the statement to which exception is now taken occurred at the outset of the prosecutor's argument and there was no objection when it was made. After nine pages further in the record and after an interruption by the court, defense counsel called attention to the statement and objected "I think that this is prejudicial for the Prosecutor to express his opinion as to the defendant's guilt and I move for a mistrial." The court replied, "Well, I would have sustained your objection to any personal comment of the Prosecutor, and I would have told the jury to disregard it, but I will deny your motion for mistrial." And it should be noted, there was no request for any other relief than a mistrial. In the third place the statement is excerpted from its context and given a prominence and meaning all out of proportion to its place in the argument. It is too long to set out here but counsel for the state started out by telling the jury about the place of counsel and the purpose of argument, how, as he called it "(a) lawsuit begins," he described the police investigation and arrest, the compiling of a report all of which is presented to the prosecuting attorney, and he said "at which time we lodge a charge or file a complaint against the party arrested. This complaint is labeled an information. This is the reason for the first instruction that the Court has given you. *On this information we charge the crime of which we think the defendant is guilty.* On the back we list witnesses, with their names and addresses," etc. (Emphasis supplied to identify the specific language complained of.) Of course, it is not proper for a prosecuting attorney to express his personal opinion, especially one inferentially based on something not before the jury, of the defendant's guilt but the quoted sentence is by no stretch of the imagination comparable to the instances upon which he relies. State v. Lenzner, 338 Mo. 903, 92 S.W.2d 895; State v. Pierson, 331 Mo. 636, 56 S.W.2d 120. It is doubtful in context that the language is fairly open to the criticism that it was an expression of a personal opinion but if it possibly is subject to the appellant's interpretation the trial court has some discretion in considering its prejudicial effect (State v. Satterfield, Mo., 336 S.W.2d 509, 515) and upon this record there is no manifest error or demonstrable abuse of discretion.

Questions not required to be presented in a motion for new trial have also been examined and the transcript shows compliance with all matters necessary to be considered by this court "upon the record before it" (Cr. Rule 28.02, V.A.M.R.; RSMo 1959, § 547.270, V.A.M.S.) and since no prejudicial error is found or demonstrated the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.