STATE of Missouri, Respondent,

v.

Sherman THOMAS, Appellant.

No. 46080.

Supreme Court of Missouri,
Division No. 1.

Feb. 10, 1958.

John M. Dalton, Atty. Gen., Richard W. Dahms, Asst. Atty. Gen., for respondent.

HYDE, Judge.

■ Defendant has appealed from a conviction of murder in the second degree and sentence of ten years in the penitentiary. He has filed no brief so we consider the assignments of error properly made in his motion for new trial. State v. Campbell, Mo.Sup., 262 S.W.2d 5. This requires consideration of whether there was sufficient evidence to support the verdict on defendant's claim that he was entitled to a directed verdict.

■ Defendant shot and killed Chris Huntley but claimed it was done in self-defense. On March 30, 1956, 20 head of deceased's cattle had been "put up" by defendant on his farm about 3½ miles from deceased's farm. Deceased, learning of this, went with his wife in her step-daughter's car to defendant's farm and found the cattle in a fenced lot near defendant's house. Defendant had gone to Buffalo (where he had a notice prepared to deceased, claiming damage done by his cattle) but his wife was at home. After waiting at a neighbor's house nearly an hour and a half for defendant to return, they went home. About 5:00 P.M., defendant came to deceased's home, carrying a gun (the same gun later used to shoot deceased) and, according to Mrs. Huntley, demanded $100.00 damages. According to defendant, he came to serve the notice requiring payment of $20.00 damages but deceased would not accept the notice. The parties had previously had trouble and defendant had been convicted and served a jail sentence for shooting one of deceased's heifers. Defendant testified that deceased had previously made threats to shoot him and on this occasion got a gun and ordered him to leave. Deceased's wife said that he did not get a gun and made no threat.

About midnight deceased left home, telling his wife he was going to see about his sheep and his cattle. He took his .22 rifle with him. Defendant was awakened by his dog's barking about midnight and upon investigation found deceased's cattle were out of the lot and saw they were going south into his cornfield. He went to the next farm (called the Clouse place) where a lane came out and found the cattle in the lane. Defendant said as he went toward them deceased stepped from behind a tree, "said 'By God, I've got my cattle and by God, I aim to keep them', and throwed his gun up (demonstrating), and there wasn't nothing else to do, I drew mine and fired twice, both barrels." Defendant had an over and under gun, a .22 rifle barrel over a .410 shotgun barrel (very small bore). He said he fired twice in rapid succession and was never closer than 20 feet from deceased. Defendant said he then turned and got away, "kinda run", and got a neighbor to take him to Buffalo to see the lawyer who had previously defended him and, after conferring with him, told the

Sheriff what had happened. The Sheriff testified defendant said "there had been a shooting, and he had killed Chris Huntley." The Sheriff also said: "I asked him what he shot him with, and he said a .410 shotgun, and I asked him where at, and he said in the face." He further stated that defendant said: "Chris stepped out from behind a tree, and had a gun, and said 'I've got my cattle', and he said 'I shot him'".

Defendant went with the Sheriff, coroner and undertaker to the place of the shooting. Deceased's body was found lying in the lane with his rifle, loaded but not cocked, lying across his arms. There were .22 shells in deceased's left hand. Deceased had a wound in the left arm, between the elbow and shoulder, made by a .22 rifle bullet and a wound in the head made by a shotgun charge. From the shotgun charge, there was a wound at the corner of the right eye that went along the temple but "wasn't underneath the bone", going out over the ear. There was also a hole in the right eye, which angled toward the top of the head, "about the size of one of those .410 shells, or your small finger"; or as described by another witness "it was slightly bigger probably than a cigarette, or probably a .410 shotgun shell" and "a little larger than a lead pencil."

Defendant gave his remaining unused .410 shells to the Sheriff, who made test firings with them at distances of 20 feet, 10 feet, 6 feet, and 3 feet, using paper to record the firing patterns at each distance. At 20 feet the firing pattern perforation of the target paper was 13 or 14 inches wide; at 10 feet it was about 8 inches wide. All the target papers were introduced in evidence and shown to the jury, as were the guns of defendant and deceased. The cap of deceased, found about a foot from his head, was also in evidence and on the right hand side of the bill of the cap there were small perforations or holes entirely through the bill. The right hand side of the cap was also torn and there was blood and brains in it. The Sheriff, after a thorough search, found only one expended .410 shotgun shell, which was found about one foot from deceased's feet.

Of course, defendant's testimony made an issue of self-defense but his credibility was for the jury to determine. The defense of self-defense was not conclusively established as defendant seems to claim in his assignment in his motion for new trial to the effect that "the jury obviously ignored the instructions on self-defense given by the court, and also ignored the defendant's undisputed and uncontradicted testimony that the deceased tried to shoot the defendant first." Under the evidence herein, this was an issue that the trial court was required to submit to the jury. State v. Westmoreland, Mo.Sup., 126 S.W.2d 202; State v. Dennison, Mo.Sup., 154 S.W.2d 756; State v. Manning, 356 Mo. 477, 202 S.W.2d 18; State v. Bartlett, 359 Mo. 881, 224 S.W.2d 100. Furthermore, there were physical facts and other circumstances in conflict with defendant's testimony. "The evidence establishes that defendant intentionally killed deceased with a deadly weapon. That is sufficient to sustain a conviction of second degree murder. State v. Hogan, 352 Mo. 379, 177 S.W. 2d 465, and cases cited." State v. Bartlett, supra, 224 S.W.2d loc. cit. 102. From the firing patterns in evidence, the nature and size of the wound in deceased's right eye, the condition of his cap and other facts and circumstances observed by the Sheriff at the scene of the shooting and the statements made by defendant to the Sheriff, the jury could reasonably find that the fatal shot was fired at very much closer range than claimed by defendant and under circumstances different from those stated by defendant at the trial. "In determining the sufficiency of the evidence to sustain a conviction, we consider as true the evidence favorable to the State and the favorable inferences reasonably to be drawn therefrom; and evidence to the contrary is rejected. State v. Sheard, Mo.Sup., 276 S.W.2d 196, 200 and cases cited." State v. Henderson, Mo.Sup., 301 S.W.2d 813, 817. Our conclusion is that there was

substantial evidence to show that defendant was guilty of murder in the second degree and we hold he was not entitled to a directed verdict.

Defendant's motion for new trial also assigned error as follows: "The Court erred in permitting Lloyd Buchanan, as a witness for the State, to testify that the gunshot which he said caused a wound on the inside of the right eye, followed a course that would have been followed if the shot had been fired at an angle such as a man would have held a gun in if he was standing over a man lying down, over the objections and exceptions of the defendant for the reasons stated at the time the objections and the exceptions were made." As to this the record shows the following:

"Q. And indicate there to the jury at what angle the course of that object took into the man's skull? A. Well, it angled, let's see—more or less in this angle (demonstrating) to the top of the head, I should say. Q. More or less upward? A. Yes, to the top of the head. Q. I will ask you, Mr. Buchanan, if that could very well have been about the same angle, with a man lying on his back on the ground, with his face slightly raised, perhaps, and a man standing over him at close range with a shotgun? A. It is possible. By Mr. Owensby: You may inquire." Defendant's counsel then began cross-examination on a different matter. No objection, motion or request being shown in the record, made at the time, it is obvious that nothing is preserved for review concerning this testimony.

The remaining assignments of the motion for new trial were as follows: "V. That the Court erred in admitting other illegal and incompetent evidence. VI. That the Court failed to instruct the jury upon all questions of law and evidence and erred by giving instructions numbers 1, 2, 3, 4, 5, 7, 8, 9, 10, 11, 12, 13, 14 and 15." These assignments are too general and fail to meet the requirements of 42 V.A.M.S. Supreme Court Rules, rule 27.20; Section

547.030 RSMo 1949, V.A.M.S., and the many cases construing them, and so preserve nothing for review. See State v. Gaddy, Mo.Sup., 261 S.W.2d 65 and cases cited.

We have examined the record and find no error respecting the sufficiency of the information, verdict, judgment and sentence.

The judgment is affirmed.

All concur.