STATE of Missouri, Respondent,

v.

Eddie WILLIAMS, Appellant.

No. 46976.

Supreme Court of Missouri,

Division No. 1.

May 11, 1959.

**812**

Emanuel Williams, St. Louis, for appellant.

John M. Dalton, Atty. Gen., Hugh P. Williamson, Asst. Atty. Gen., for respondent.

HYDE, Presiding Judge.

Defendant was found guilty of murder in the second degree and has appealed from the judgment and sentence of 17 years in the penitentiary. The principal issue on appeal is whether the court erred in refusing to give an instruction on manslaughter.

Defendant was charged as an habitual criminal but this was not submitted to the jury. No brief has been filed by defendant, so we consider the assignments properly made in his motion for new trial. State v. Ulrich, Mo.Sup., 316 S.W.2d 537; State v. Stehlin, Mo.Sup., 312 S.W.2d 838. The only defense was insanity. Defendant did not testify but was present in the courtroom at all times. His first assignment combines several claims about his insanity defense, among them being claims that the verdict was against the weight of the evidence (which was for the trial court) and was the result of passion and prejudice, which we do not find to be shown by the record. It is also claimed that defendant thought the trial was to be a sanity hearing and not a trial on the merits so that he was taken by surprise and was unprepared for trial other than on the sanity issue. However, defendant was represented by a lawyer, there was an opening statement made by the State, and the State's evidence of the murder heard, followed by an opening statement by defendant's lawyer. No claims of surprise, and no such objections or requests for continuance, were made at the trial, which followed the usual course of a criminal trial with no issue shown concerning sanity until the defendant's expert witness was called. The record does indicate that the trial judge made considerable effort to bring out everything favorable to defendant, particularly in connection with his defense of insanity. The trial judge was in a much better position than we are to pass on the grounds contained in this assignment and he has overruled the motion for new trial. We cannot find any abuse of discretion in his action and, therefore, this assignment is overruled.

The State's evidence showed that Curtis Page and his wife, on their way to a moving picture theatre, stopped their car at a place where Page intended to get something for them to drink with sandwiches Mrs. Page was making. As she sat in the car making the sandwiches, while Page was inside the place to buy drinks, defendant came up to the side of the car and started molesting her, using profanity and talking about sex perversion. Mrs. Page turned her back and ignored him and thought he had gone across the street. Then she saw defendant entering the driver's side of the front seat, and he was "saying the same things over again," so she began "banging on the horn" for her husband to come. Page rushed out and said, "What are you doing annoying my wife?" Page and defendant started struggling; Page "caught

him in the collar and hit him;" they exchanged blows, struggling across the street, and when Page stood up Mrs. Page saw that he was bleeding. He collapsed before she could get to him and with the help of others she got him in the car and rushed him to the Homer G. Phillips Hospital, where the doctor who examined him found stab wounds. He died not long after his arrival there and an autopsy showed the cause of death to be a stab wound in the right ventricle of the heart. One of the policemen who arrested defendant the same evening said defendant had what appeared to be blood on his shirt; and that defendant said: "I just cut a punk and I hope he dies." Defendant had a black-handled pocket knife which he said "was his knife and that he used it in the cutting." Defendant later made substantially the same statement, as to his hope that Page would die, at the hospital, when he was taken there by the police. There was no evidence that Page had any weapon.

We have frequently held that when the evidence shows the defendant intentionally killed deceased with a deadly weapon that is sufficient to sustain a conviction of second degree murder. State v. Thomas, Mo.Sup., 309 S.W.2d 607, 609, and cases cited. We have also held "that the existence or nonexistence of malice determines whether a homicide is murder in the second degree or manslaughter." State v. Taylor, Mo.Sup., 309 S.W.2d 621, 623, and cases cited. "Malice," however, "does not mean spite or ill will, but the intentional doing of a wrongful act without just cause or excuse." State v. Ayers, Mo.Sup., 305 S.W.2d 484, 486, and cases cited. Concerning manslaughter, we have recently said: "Malice is an essential ingredient of murder; and, although intentional, a homicide yet may be manslaughter, if without malice, as where one kills in a transport of sudden passion aroused by lawful provocation. * * * 'Neither · words of reproach, how grievous soever, nor indecent provoking actions or gestures, however much calculated to excite indignation or

arouse the passions, are sufficient to free the party killing from the guilt of murder. To have the effect to reduce the guilt of killing to the lower grade, the provocation must consist of personal violence.' * * * Violence to the person is the standard exacted by the law as affording the basis for the inference of that heat of passion which reduces the grade of the crime in a homicide case from murder to manslaughter." State v. Taylor, Mo.Sup., 309 S.W.2d 621, 624. While not clear, it might reasonably be inferred that deceased struck the first blow, although there may have been some "struggling" between the two before he did so. Nevertheless, the question is whether there was lawful provocation in view of defendant's actions toward Page's wife, which incited the use of force upon him to prevent his own unlawful conduct.

"It does not matter how violent the slayer's passion may have been, it will not relieve him of the implication ·of murder unless it was engendered by a provocation which the law recognizes as being reasonable and adequate. If the provocation was not sufficient, the crime is murder." 26 Am.Jur. 171, Sec. 25. "A blow will not suffice in all cases, nor will slight or trivial injuries." 26 Am.Jur. 172, Sec. 26. We do not think that the action of Page to protect his wife from an assault (see 4 Am. Jur. 142, Sec. 27; annotation 12 A.L.R.2d 972) and perhaps kidnapping, which has not been unknown under the circumstances shown herein, reasonably could be held to be an adequate and lawful provocation to defendant (using a knife on an unarmed man) sufficient to reduce the grade of his crime from murder to manslaughter. See Wharton on Homicide, 3rd Ed., Secs. 168–172. In fact, such a reaction from a husband might reasonably be anticipated by one engaging in such conduct toward his wife. A somewhat similar situation was considered by the Supreme Court of Indiana, in Duncan v. State, 171 Ind. 444, 86 N.E. 641, 643, in which the defendant therein killed the husband of a woman with

whom the defendant was seeking illicit sexual relations. The principal issue considered there was self-defense (which could not be claimed by one provoking the encounter, Warren on Homicide, Sec. 100), and the court affirmed a conviction of murder in the second degree, saying: "Appellant claiming that he was assaulted, and in defending himself killed his adversary, the important question was whether he was free from fault tending to provoke the fatal encounter. * * * If appellant armed with a deadly weapon was lurking about the alley for the sole purpose of debauching the wife of the deceased, and thus menacing the personal safety, and the sanctity of the home of deceased, when attacked, he was not in a place where he had a right to be and without fault. It would be a reproach upon the law and our civilization to acquit a villain of fault in provoking an attack upon himself by his intended victim while lurking about his premises in the darkness for the avowed purpose of kidnapping, or committing larceny, burglary, or arson. It would be alike absurd to hold a libertine confessedly guilty of defiling the wife of another without fault when assaulted by the outraged husband while upon or about his premises under cover of darkness seeking an opportunity to repeat the offense. The doctrine advanced in the refused instructions are antagonistic to moral precepts, and fundamental principles of law, both human and divine."

■ In State v. Blunt, 110 Mo. 322, 19 S.W. 650, 655, defendant's conviction of murder in the first degree was affirmed and it was held that defendant was not entitled to a manslaughter instruction because the evidence showed that defendant was the aggressor without "any legal provocation tending to produce hot blood." Defendant had boarded a train jostling other passengers, cursing and threatening to kill the conductor who tried to stop his improper conduct. The conductor called for other trainmen when thereafter defendant crowded him down the steps of the moving train.

Brakeman Majors came and got hold of defendant's shoulder with his left hand (his lantern was in his right hand), asking defendant to go into the smoker. Defendant pushed Majors from him so that he fell and then drew a revolver and shot him before he could get up. This court said: "Majors had the right to go to the rescue of the conductor, first, in the endeavor to preserve order and the peace on the cars, and, second to prevent felony from being committed, or the conductor from being seriously injured; and the act of Majors in doing this cannot be characterized as being an assault, or as meriting the murderous treatment he received." See also State v. Dunn, 80 Mo. 681; State v. Inks, 135 Mo. 678, 37 S.W. 942; Warren on Homicide, Sec. 100. In 1 Warren, 502, Sec. 100, citing these two Missouri cases, it is said: "Where at the time of inciting the provocation the defendant was armed, the homicide is murder, unless he had no intention of using his weapon, except in case of outside interference, or unless the deceased was on an equal footing in point of defense." See also Wharton on Homicide, Sec. 181. To apply the principles of these cases to this case, certainly Page had a right to go to the rescue of his wife to prevent an assault upon her and defendant's otherwise highly improper and illegal conduct toward her. Certainly also defendant was armed with a deadly weapon, while Page was unarmed, and defendant used this weapon as soon as Page attempted to prevent his illegal acts. Although most of the cases of improperly inciting conduct (claimed to be provocation) are those of commencing a quarrel with the deceased by using or threatening physical violence against him (see also annotation concerning such conduct toward a relative, 17 L.R.A.,N.S., 795, and 40 C.J.S. Homicide § 48c, p. 913), certainly that would be no more likely to incite one to use physical force against an aggressor than defendant's immediate and continuing conduct toward Page's wife herein. Furthermore, defendant's statements to the police, to the effect that he

wanted his victim to die, are some evidence of malice. 3 Warren on Homicide 149, Sec. 273, and cases cited. We, therefore, hold that defendant cannot rely on Page's reaction to his own unlawful conduct as an adequate and lawful provocation for defendant's use of his knife against him because it was thus incited by defendant himself; and that the trial court properly refused a manslaughter instruction in this case.

We have examined the record and find no error respecting the sufficiency of the information, verdict, judgment and sentence.

The judgment is affirmed.

All concur.