STATE of Missouri, Respondent.

v.

Robert ANDERSON, Appellant.

No. 49550.

Supreme Court of Missouri,
Division No. 2.

Feb. 10, 1964.

---

Al Mendelson, Kansas City, for appellant.

Thomas F. Eagleton, Atty. Gen., Jefferson City, Frank P. Motherway, Sp. Asst. Atty. Gen., St. Louis, for respondent.

PRITCHARD, Commissioner.

Defendant was convicted by the verdict of a jury of murder in the second degree, and his punishment was set by the jury at imprisonment in the State Penitentiary for 15 years. Credit was given on the sentence for eight months spent by defendant in the county jail.

On the appeal here, defendant has filed no brief. We therefore review all of his assignments of error properly raised in his motion for new trial. Supreme Court Rule 28.02, V.A.M.R.

■ The facts of this case will be stated in their light most favorable to the state by reason of defendant's assignment of error (No. 14) of the trial court in overruling his motion for judgment of acquittal made at the close of all the evidence.

It was admitted by counsel for defendant in his opening statement that the deceased victim, Clarence Steele (sometimes in the record referred to as Eddie), was shot with the shotgun which has been marked as Exhibit (A) for the state. There was other evidence, below noted, of these admitted facts. Defendant, a man 54 years of age, occupied an apartment at 2706 Benton Boulevard in Kansas City, Missouri, with one Frank Walker.

On the day of the shooting, September 18, 1961, Officer Don Lanning, of the Kansas City, Missouri Police Department, received a call to go to the 2700 block of Benton Boulevard to investigate a reported shooting. He found the defendant in the back yard at which time the defendant told him the victim and Walker had attempted to take over the apartment; that defendant on several occasions had told the victim he wasn't going to allow this, and on this occasion defendant shot him. Later, about 20 or 25 minutes, defendant told another story that the victim had produced a knife and was threatening him with it. Officer Lanning was the first person from the Police Department to view the scene. The body of deceased was lying partly in a hallway and partly in the living room of the apartment. Defendant told investigating officer Harlow that he had shot the victim, with whom he had had previous trouble over a length of time; that he had been afraid of the victim and had armed himself with a shotgun, and when the victim came into the room in which he was sitting he shot him with a .16 gauge shotgun. A spent shell from the shotgun was removed by the officer at the scene of the shooting, and two

live shells were taken by the officer from the possession of defendant.

Upon further questioning of defendant, Officer Harlow learned his then version of the shooting. Defendant stated that he had been sitting on the divan facing east at the far west end of the apartment in a room approximately 9 by 12 feet in size. Defendant had come home that day about 11:30 P.M. and found Frank Walker and deceased in the kitchen drinking. Defendant and deceased started arguing, so defendant left, returning about 2:00 or 2:05 A.M., at which time the victim and Walker were still drinking. Defendant went on into the west room, laid down on the divan and went to sleep. He was later awakened by deceased "hollering" at him and stating that he was going to come in and break his neck. Believing the threat, defendant got up, went to a small closet in the west room, got his shotgun and went back over and sat down on the divan. He told deceased not to come in there or he would shoot him, and deceased did come on in and defendant fired the gun and shot him. At the time of the shooting, the victim, Mr. Walker and defendant were the only persons present.

Frank Walker gave his eye-witness version of the incident as follows: He was a roommate of defendant, Robert Anderson, on September 18, 1961. The shooting occurred just a few minutes after deceased and defendant got home, at which time defendant came in to where Walker was sleeping, woke him and said, "You better make Eddie (deceased) go on home or there will be trouble." Defendant then went back and got the gun and sat down on the lounge. Walker finally got Eddie in the notion of going home, and came into where defendant was sitting. Defendant said, "You better hurry up and get him on home," and defendant came to the door between the two rooms, and Eddie also went to the door, started to go out, turned around and said, "Robert, we haven't had no trouble, what have I did to you?" Outside of that there was no other word said. Defendant "just up and shot him." Deceased had stuck out

his hand to shake hands with defendant and Walker could see no knife in it, and at that time deceased was 10 feet from defendant, and had taken no steps toward him.

■■ Defendant was charged with the offense of first degree murder under Section 559.010, RSMo 1959, V.A.M.S. As noted, defendant was convicted of the lesser included offense of second degree murder. The elements of that offense are set forth in the case of State v. Strong, Mo., 339 S.W. 2d 759, 764 [4, 5], as follows: "Murder in the second degree is defined as the killing of a human being willfully, premeditatedly and with malice aforethought, but without deliberation." See Section 559.020, RSMo 1959, V.A.M.S. By way of further definition, in State v. Williams, Mo., 323 S.W.2d 811, 813 [5–8], it was said: " 'Malice,' however, 'does not mean spite or ill will, but the intentional doing of a wrongful act without just cause or excuse.' "

■ From the evidence in this case the jury could reasonably find that after the verbal altercations between deceased and defendant, the defendant went to his closet where he kept the shotgun, got it and brought it back with him to the divan. The jury could find that when deceased started to leave the apartment he attempted to make peace with defendant and that the defendant thereupon willfully and with malice aforethought, without provocation, just cause or excuse, but with premeditation, shot the deceased. See State v. Richardson, Mo., 321 S.W.2d 423. The state's case did not fail for want of proof, and the trial court did not err in refusing to direct a judgment of acquittal. This point is ruled against defendant.

■ The following quoted assignments of error preserve nothing for our review under the cited cases below in that they fail to set forth in detail and with particularity the specific grounds or causes for the motion. Supreme Court Rule 27.20(a), V.A. M.R. "1. The verdict was the result of passion and prejudice," State v. McMillian,

Mo., 338 S.W.2d 838, 845 [9]; "2. The verdict was against the greater weight of the creditible (sic) testimony and evidence." State v. Butler, Mo., 353 S.W.2d 698 [2]; "3. The Court erred in giving each and every instruction offered by the State." State v. Ivory, Mo., 327 S.W.2d 870, 871 [2]; "16. That the verdict of the jury was contrary to the law and evidence in the case." State v. Ivory, supra, at p. 871 [1].

We pass on to other properly raised and preserved assignments of error.

 The information in this case charges that defendant did "unlawfully, wilfully, feloniously, premeditatedly and deliberately and of his malice aforethought, make an assault in and upon one Clarence Steele with a dangerous and deadly weapon, to-wit: a .16 gauge shotgun, loaded with metal pellets, then and there inflicting upon the said Clarence Steele a mortal wound, * * *." Defendant complains of the trial court's action in giving Instructions Nos. 3 and 4, upon the offenses of murder in the second degree and manslaughter, in that both submitted the fact that the shotgun was loaded with "gunpowder and metal pellets" when the information failed so to charge the defendant therewith. These complaints are frivolous and are without merit. Defendant admitted he fired the shotgun. The jury could infer that it was loaded with gunpowder, and use its common knowledge and experience that gunpowder is necessary to the firing of such a weapon. These assignments (Nos. 4 and 5) are ruled against defendant. Defendant also assigns as error this same submission in the first degree murder instruction No. 1. As indicated above, the inclusion of the word "gunpowder" is not error, but even if it were defendant may not complain inasmuch as he was convicted of second degree murder. See State v. Lewis, 248 Mo. 498, 154 S.W. 716, 719 [1]; State v. Riddle, 179 Mo. 287, 78 S.W. 606, 609. Assignment No. 6 is likewise ruled against defendant.

 By assignment of error No. 7 in his motion for new trial defendant says the trial court erred in failing and refusing to discharge the jury at defendant's request by reason of the claimed highly prejudicial remarks by counsel for the state in his opening statement that defendant was on trial for the "unique crime of murder" and that "defendant committed a crime." Reference to the transcript reveals that there was never any such request or any objection whatsoever to the opening statement. Nothing is preserved by this assignment which is raised for the first time in the motion for new trial. The trial court was never given any opportunity during the trial to correct the alleged error by instructing the jury. State v. Sykes, Mo., 372 S.W. 2d 24, 27 [6–8]. Assignment of error No. 7 is overruled.

 Assignment of error No. 8 is that "the State failed to prove beyond a reasonable doubt the defendant's guilt", and the same being without merit, it is overruled. The submissibility of the state's case is above discussed and ruled. It was for the jury to determine under all of the evidence the defendant's guilt. State v. Spraggins, Mo., 368 S.W.2d 407, 410 [3–6].

 Defendant next says, by his assignment No. 9, that the court erred in permitting the state's witnesses to draw diagrams and use a blackboard. No objection to this procedure was made at the time it was being done, other than an objection to the state's attorney placing a ring around a circle on the diagram to add emphasis, whereupon the court instructed the prosecuting attorney to remove the ring, which was done. No error is preserved. Nonetheless, such diagrams (here made of the apartment rooms and hallway where the shooting occurred) aid the jury in its understanding of testimony and its determination of all the facts surrounding the occurrence. State v. Brooks, Mo., 159 S.W. 2d 646, 647; 98 C.J.S. Witnesses § 327, p. 28. Assignment No. 9 is ruled against defendant.

 Assignment No. 10 sets forth that "the testimony and evidence of the wit-

ness Walker was of no probative value for the reason that it was contradictory, speculative and conjectural." While there were discrepancies in some details given in evidence by the testimony of witness Walker, the central theme of it was that defendant "up and shot" deceased without provocation. The credibility of all of his testimony, including impeaching evidence, was for the jury. State v. Tompkins, Mo., 277 S.W.2d 587, 590 [1]; State v. Jones, Mo., 358 S.W.2d 782, 784 [4]. Assignment No. 12 relates also to the testimony of Walker in that defendant says witness Walker disqualified himself as a witness when he stated, "I don't know what happened but I do know how it happened." No objection was made nor was there any motion to strike the testimony. However, a reading of the witness' testimony reveals that he actually said, "Well, I know what happened but I don't know why it happened; no cause for it to my knowing; it happened before they got there I guess." After this was repeated by the Court Reporter, the witness testified, "No, I said before they come home; they hadn't been home but a few minutes, when this happened." A fair interpretation of this testimony is that something unknown to the witness happened between defendant and deceased prior to the time they came home which caused the verbal incident, and the witness' testimony related only to what he knew as to how the shooting occurred. We are at loss to ascertain any error with respect to this testimony. Both Assignments Nos. 10 and 12 are overruled.

In his assignment No. 11, defendant complains about the admission of photographs, State's Exhibits 1, 2, 3, 4 and 5, which are of the apartment where the shooting occurred. The first three exhibits were admitted without objection, the last two over the objection of defendant "that it has not been established at this time that there has been no movement or change of the furniture or other items in the room from the time that the occurrence took place up to the time of the photographs being made." The identifying witness stated the photo-

graphs were made by him on September 18, 1961, soon after the reported homicide, and that they fairly represent the premises at that time. These exhibits were admissible in evidence. State v. Brown, Mo., 312 S.W.2d 818, 822 [3–7]. Assignment No. 11 is overruled.

Assignment No. 13 is that the court erred in refusing to sustain defendant's motion for judgment of acquittal made at the close of the state's case. Defendant thereafter testified in his own behalf, and thereby waived any claim of errors. Also, we have discussed the submissibility of the state's case under defendant's assignment No. 14. Assignment No. 13 is overruled.

Defendant testified that there was a fourth person, one Felix Hardin, present at the time of the shooting. In rebuttal, the state called certain police officers who testified that they had never before heard of Felix Hardin. Defendant, in his assignment No. 15, contends that the state did not by these witnesses offer any rebuttal testimony. It is obvious that, in view of the defendant's testimony that Hardin was present, this was proper rebuttal testimony. Assignment No. 15 is overruled.

The last assignment of error, No. 17, contains defendant's assertion that "the verdict was void because the attorney for the State rendered void the instruction of the Court as to 'Second Degree Murder' by stating to the jury that this was 'Murder in the First' and if anything else it is self-defense." The court properly instructed as to first degree murder as it did on the issue of self-defense. The argument was within the evidence and permissible inferences deducible therefrom, and was within the law as declared by the court in its instructions. Furthermore, no objection was made by defendant to this argument. For these reasons, Assignment No. 17 is overruled.

We have examined the record pursuant to our discretionary authority under Supreme Court Rule 27.20(c), and we find no

error therein. The information is sufficient to apprise defendant of the offense for which he was tried. He was duly arraigned and entered his plea of not guilty. Defendant was informed of the verdict of the jury, which was in proper form, allocution was granted and the judgment of conviction was entered. The sentence was in accordance with the verdict and was within the permissible limits for the offense of second degree murder. Defendant was accorded a fair trial, throughout which he was present in person and by counsel.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

All of the Judges concur.