**STATE of Missouri, Respondent,**

v.

**Doris SMART, Appellant.**

**No. 57293.**

Supreme Court of Missouri, Division No. 1.

Sept. 11, 1972.

John C. Danforth, Atty. Gen., Gene E. Voigts, First Asst. Atty. Gen., Jefferson City, for respondent.

Robert G. Duncan, and Austin F. Shute, Kansas City, for appellant.

WELBORN, Commissioner.

A jury found Doris Smart guilty of murder in the second degree and fixed her punishment at 17 years' imprisonment. She has appealed from the ensuing judgment and sentence.

According to the state's evidence, the only evidence presented at the trial, Doris Smart shot her husband, Jack L. Smart, Sr., in their house near Osceola three times with a .30-.30 rifle on the evening of August 21, 1970. The shooting culminated a stormy and frequently violent existence of the deceased, his wife and their four children, with the deceased the violent actor. On the day of his death, he had displayed his anger because the family had gone to Clinton in the morning without preparing a meal for him. In the afternoon, Jack was trying to teach his nine-year-old son to shoot and slapped him on the head whenever he sighted with the

wrong eye. Doris observed this and told her daughter: "Don't be surprised if something happens tonight." Later she told the daughter, "Don't be surprised if something happens tonight because I might kill him." She showed the daughter several new bullets and told her they would not jam in the gun.

In the evening, Doris and her husband, both of whom had been drinking, went hunting for a short time and returned to the house. Jack later got the family engaged in a chicken plucking job which he thought should have been done earlier. At the conclusion of the job, Jack and his 13-year-old son, Jack, Jr., became involved in an argument. Jack knocked his son down in the living room of the house and started choking him. His daughter said, "Do something, he is going to kill him." Jack ordered the girl to get a belt and she went to a bedroom for it. Doris also went to the bedroom and got a .30-.30 rifle. When she returned to the living room with the rifle, the father and son had separated. Doris told Jack, Sr. to get out and he said he was leaving. He started to go but then turned around and took a step back toward the living room. Appellant fired a shot which struck her husband. He fell to the floor and said, "Honey, don't do it." She fired two more shots into his body as he lay on the floor.

Appellant then told her son to get a .22 rifle and shoot her in the arm "to make it look more like self-defense." The boy did as directed. The sheriff was called. Jack, Sr. was dead when the sheriff arrived.

Appellant was charged with murder in the first degree. At the trial, the court instructed on murder in the first degree, second degree, manslaughter and justifiable homicide.

On this appeal, the instruction on murder in the second degree, the offense of which the appellant stands convicted, is attacked. The here pertinent of the instruction was as follows:

" * * * If you find and believe from the evidence beyond a reasonable doubt:

"First, that on August 21, 1970, in the County of St. Clair, State of Missouri, the defendant caused the death of Jack Lee Smart by shooting him, and

"Second, that the defendant intended to do serious bodily harm to Jack Lee Smart, and

"Third, defendant did not do so in sudden fear or agitation provoked by physical violence committed or threatened to be committed by Jack Lee Smart to the person of the defendant, or her children, then you will find the defendant guilty of murder in the second degree."

Appellant contends that this instruction omits required findings by the jury of premeditation and malice aforethought which she contends are essential elements of the crime of murder in the second degree.

Except for the substitution of intent to do great bodily harm for intent to kill in paragraph second, this instruction follows the form suggested by the Committee of the Missouri Bar on Criminal Pattern Instructions. That committee's suggested form of instruction for murder in the first degree was recently found sufficient by this court in State v. Marston, Mo., 479 S. W.2d 481, decided April 10, 1972. The attack in that case was similar to that here made, i. e., that the instruction failed to use terminology which according to prior appellate court decisions was essential to encompass all of the elements of the offense. The Marston case makes clear that the courts are not bound to continue to instruct in criminal cases in the stilted, unnatural language of instructions which have met with approval in the past. That language is not immutable and a change which adequately and accurately describes the offense is not to be condemned simply because it ignores the long-accepted terminology.

What has been described as the "classic definition" (State v. Tettamble,

Mo.Sup., 394 S.W.2d 375, 380[12–14]) of murder in the second degree is "the killing of a human being wilfully, premeditatedly, and with malice aforethought, but without deliberation." State v. Bruton, Mo.Sup., 383 S.W.2d 525, 528[2–4]. The instruction here did not require expressly a finding of "premeditation" or "malice aforethought." In the Marston case, premeditation as an element of murder in the first degree was found to have been adequately encompassed by language of the instruction which also supplied the issue of deliberation. Such language is not to be found in the instruction here under consideration, inasmuch as deliberation is the element which distinguishes first and second degree murder. State v. Davis, Mo.Sup., 400 S. W.2d 141, 145[1–4].

■ Under the old instruction employing the term "premeditatedly" the court was obliged also to define the term for the benefit of the jury. State v. LaMance, 348 Mo. 484, 154 S.W.2d 110, 118–119[10]. The common definition of the term was given as " 'Premeditation' means thought of beforehand, any length of time, however short." State v. Kilgore, 70 Mo. 546, 555. See State v. Baber, Mo.Sup., 297 S.W.2d 439, 441[1–4]. Under the instruction in this case, the jury were required to find that appellant shot her husband and that she intended to cause him serious bodily harm. An affirmative finding on such submission necessarily involves a finding that the appellant thought of the shooting before she did it. The jury were required to find the facts which necessarily demonstrated premeditation and, therefore, the instruction is not objectionable on the grounds that the element was not specifically mentioned.

■ On the issue of "malice" or "malice aforethought," that again is an element of murder, including murder in the second degree. State v. Wieners, 66 Mo. 13; State v. Mosley, Mo.Sup., 415 S.W.2d 796, 798[1, 2]. Malice, however, does not mean spite or ill will, but the intentional doing of a wrongful act without just cause or excuse, and not spite or ill will. State v. Williams, Mo.Sup., 323 S.W.2d 811, 813[5–8]; State v. Ayers, Mo.Sup., 305 S. W.2d 484, 486[1–3]. The instruction here required a finding that appellant shot her husband, intending to cause him serious bodily harm. The instruction further hypothesized the provocation which would have excluded malice and avoided a conviction for murder in the second degree. Again the instruction properly placed before the jury the factual elements which if found by the jury would produce the legal conclusion that appellant had acted with malice and was therefore guilty of murder in the second degree.

Appellant attacks the manslaughter instruction because it omitted any reference to provocation. The instruction given on this subject did not follow the suggested pattern instructions. As with the suggested pattern voluntary manslaughter instruction, there is no reference to provocation which would permit a finding of action in the heat of passion, negativing malice, and therefore authorizing a finding of guilt of manslaughter.

■ In State v. Gore, 292 Mo. 173, 237 S.W. 993, the court held that under the definition of manslaughter enacted by the General Assembly in 1919 (Laws 1919, p. 256), abolishing degrees of manslaughter and eliminating any reference to the common law offense, "heat of passion" was no longer an element of the crime and need not be included in an instruction defining the offense. 237 S.W. 996–997 [8–10]. The current definition of the offense [§ 559.070, RSMo 1969, V.A.M.S.] is the 1919 enactment and the Gore holding answers the objection here raised. See State v. Clark, Mo.Sup., 412 S.W.2d 493, 496; State v. Brooks, Mo.Sup., 360 S.W.2d 622, 628–629[13].

None of the cases cited by appellant on this point involves the content of a manslaughter instruction after the 1919 enactment, supra. See State v. Williams, Mo. Sup., 442 S.W.2d 61.

As above noted, the manslaughter instruction was not in the form of the suggested pattern instructions, as were the first and second degree murder instructions. The mixing of the old and the new resulted in the use in the manslaughter instruction of terms such as "wilfully and feloniously," "without malice" and "without premeditation." Such terms were not defined and appellant contends that the failure to do so constituted error. The term "wilfully" is frequently the subject of definition by instruction, but the definition usually given is "intentionally, not accidentally." State v. Foster, 355 Mo. 577, 197 S.W.2d 313, 321[16]. This is the common meaning of the term. It was not here used in a technical or different sense, so no definition was required. State v. Harkins, 100 Mo. 666, 13 S.W. 830, 831[2]. The term "feloniously" is not required to be defined because it describes the grade of the offense and is not an element of the crime. State v. Barton, 142 Mo. 450, 44 S.W. 239. Had appellant been found guilty of manslaughter, she would not be heard to complain of the failure to define malice and premeditation. State v. Rack, Mo.Sup., 318 S.W.2d 211, 216[5, 6]. Therefore, there can be no error here when she was in fact convicted of murder in the second degree.

Appellant's final contention is that the trial court erred in giving, over her objection, an instruction advising the jury that the defendant was not required to testify and that her failure to do so should give rise to no presumption of guilt or inference of any nature. Insofar as the objection is based upon the provisions of § 546.270 RSMo 1969, V.A.M.S., and Supreme Court Rule 26.08, V.A.M.R., the answer to the objection is supplied by the case of State v. De Witt, 186 Mo. 61, 84 S.W. 956, 957-958, in which the giving of such an instruction over the defendant's objection was held not error. See also State v. Renard, Mo.Sup., 273 S.W. 1058.

Appellant also invokes federal constitutional guaranties as applied in Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106. The Griffin case has been considered by several courts in connection with the question here raised. See Annotation, "PROPRIETY UNDER GRIFFIN v. CALIFORNIA AND PREJUDICIAL EFFECT OF UNREQUESTED INSTRUCTION THAT NO INFERENCE AGAINST ACCUSED SHOULD BE DRAWN FROM HIS FAILURE TO TESTIFY," 18 A.L.R.3rd 1335. Without citation of Griffin, the Arkansas Supreme Court has recently held that the giving of an instruction such as that here involved, over the objection of the defendant, does constitute reversible error. Mosby v. State, 246 Ark. 963, 440 S.W.2d 230; Russell v. State, 240 Ark. 97, 398 S.W.2d 213, 215[5]. An Arizona court of appeals also held, without reference to Griffin, that the giving of such an instruction without the request of the defendant constituted reversible error. State v. Cousins, 4 Ariz. App. 318, 420 P.2d 185, rehearing denied 4 Ariz.App. 468, 421 P.2d 901; State v. Zaragosa, 6 Ariz.App. 80, 430 P.2d 426. Another Arizona court of appeals, relying upon federal authority, held that so instructing was not reversible error. State v. Dean, 8 Ariz.App. 508, 447 P.2d 890, 895[10]. The Arizona Supreme Court in State v. McAlvain, 104 Ariz. 445, 454 P.2d 987, 989-990[5], resolved the conflict in favor of the Dean rule. California courts of appeal have considered this question frequently. Although there appears to be some conflict in those decisions as to whether or not the giving of such an instruction over the objection of the defendant constitutes reversible error (see People v. Molano, 253 Cal.App.2d 841, 61 Cal.Rptr. 821, and People v. Brown, 253 Cal.App.2d 820, 61 Cal.Rptr. 368), a recent holding of one of the courts of appeal is that the giving of the instruction over the objection of the defendant does not constitute error. People v. Brady, 275 Cal.App.2d 984, 80 Cal.Rptr. 418, 423[4]. The decisions of those courts appear to agree that Griffin does not preclude the giving of such an instruction over the objection of the defend-

ant, inasmuch as Griffin only prohibits comment or instruction which would permit an adverse inference from defendant's failure to testify. People v. Hernandez, 264 Cal.App.2d 206, 70 Cal.Rptr. 330, 332; People v. Brady, supra, 275 Cal.App.2d 984, 80 Cal.Rptr. 418, 422[2]. This court has similarly applied Griffin in dealing with alleged prejudicial comment by prosecutors upon the defendant's failure to testify. See State v. Kennedy, Mo.Sup., 396 S.W.2d 595, 598–599[4, 5]; State v. Bell, Mo.Sup., 442 S.W.2d 535, 537–538[4].

Numerous jurisdictions which have considered the question here raised since Griffin have held that the giving of such an instruction without the defendant's request and in some cases over the objection of the defendant does not constitute reversible error. State v. McAlvain, supra; Kimmel v. People (Colo.), 473 P.2d 167; State v. LaBreck, 159 Conn. 346, 269 A.2d 74, 75–76[1]; DeLaine v. State (Fla.App.), 230 So.2d 168, 175[12]; People v. Thomas, 27 Mich.App. 637, 183 N.W.2d 860, 861[1]; Patterson v. State, 81 N.M. 210, 465 P.2d 93, 96[12]; Peoples v. State (Tex.Cr.App.), 459 S.W.2d 868, 869[3]; State v. East, 3 Wash.App. 128, 474 P.2d 582, 584–586[4, 5]; Sullivan v. Scafati, 1st Cir., 428 F.2d 1023, 1027[6], cert. den. 400 U.S. 1001, 91 S.Ct. 478, 27 L.Ed.2d 452; United States v. Wick, 7th Cir., 416 F.2d 61, 62–63[3], cert. den. 396 U.S. 961, 90 S.Ct. 430, 24 L.Ed.2d 425; United States v. Houston, 5th Cir., 434 F.2d 613, 615[4, 5]; Hanks v. United States, 10th Cir., 388 F.2d 171, 175[11], cert. den. 393 U.S. 863, 89 S.Ct. 144, 21 L.Ed.2d 131.

The Iowa Supreme Court in State v. Kimball, Iowa, 176 N.W.2d 864, 868–869, considered the question here raised in the light of Griffin and concluded that giving the instruction in the absence of a request was not reversible error. However, the court further concluded (176 N.W.2d 869):

"We must recognize, however, that the instruction is a comment on defendant's failure to testify even though it is supposedly for defendant's benefit and is designed to keep the jury from speculating on the reasons for his failure to take the stand and drawing improper inferences therefrom. There are those who believe the instruction is more harmful than helpful and regardless of how favorably to the accused the instruction may be worded it may inadvertently cause the jurors to consider certain adverse inferences which would not otherwise have entered their minds.

"[12] Because of the divergent opinions in this sensitive area and as the giving of even a cautionary instruction favorable to defendant may violate the spirit of Griffin v. State of California, supra, we believe it is advisable for us to take a definitive position on this issue. We now hold that such instruction should not be given in any future trial unless it is requested by defendant, and that it will be considered error if it is given, absent such request, in any trial started after the date this opinion is filed."

In State v. Hutchinson, Mo.Sup., 458 S.W.2d 553, Judge Donnelly in a concurring opinion (458 S.W.2d 556–559) suggested the adoption, as a matter of policy and not as a constitutional requirement, of a rule whereby the instruction would be given in any case in which the defendant failed to testify and made no objection to the instruction. That suggestion received the concurrence of one other member of the Court en Banc.

In the case of Becher v. United States, 2nd Cir., 5 F.2d 45, 49[10], Judge Learned Hand made the following comment in connection with the question here raised: "It is no doubt better if a defendant requests no charge on the subject [of his failure to testify], for the trial judge to say nothing about it; but to say that when he does, it is error, carries the doctrine of self-incrimination to an absurdity." See United States v. Garguilo, 2nd Cir., 310 F.2d 249, 252[1]. Practically all of the cases which have considered the subject hold

that Griffin v. California, supra, does not make the giving of an instruction such as that here involved, whether or not requested by the defendant, a violation of the constitutional protection against self-incrimination. Appellant here has advanced no convincing reason for this court's following a contrary position. In view of the recent failure of the Court en Banc, when opportunity was offered, to adopt a rule on this subject as a matter of policy, no further comment on that score is here appropriate.

Judgment affirmed.

HIGGINS, C., concurs.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the court.

All of the Judges concur.